State
v.
Hobbs and
Strong.

STATE *against* ABRAHAM HOBBS and RETURN STRONG.

Torture to extort a confession of the truth from persons accused of crimes, contrary to the common law and constitution of Vermont.

INDICTMENT for a misdemeanor in torturing a person suspected of theft.

The indictment charged the defendants, that at *Rutland*, in the County of *Rutland*, on the first day of *January*, A. D. 1803, they being persons of cruel and inhuman dispositions, and moved by the suggestions of their own corrupt minds, made a violent assault upon the body of *Cato Jenkins*, then and there being in the peace of the State, and him the said *Cato Jenkins* with force and arms did then and there beat, bruise, torment, torture, and burn with fire, and him the said *Cato Jenkins* with like force did suspend and hang by the neck, &c. *et alia enormia*, &c. all which is against law, the constitution, and the peace and dignity of the State of *Vermont*.

The Jury acquitted *Return Strong*, and found *Abraham Hobbs* guilty.

The Court, in delivering sentence, observed, That there was no statute against the crime, as the Legislature never could have contemplated its commission in an enlightened age, and amongst a free people. That if such statute had existed, it would probably have been in the power of the Court to award a punishment more adequate to the enormity of the offence.

That the indictment is founded on the common law, and must be followed by a common law punishment.

However the practice of torture to extort confession had prevailed in various governments, it certainly never was sanctioned by the common or statute law of our *English* ancestors; for although the rack was occasionally resorted to in the reign of *Henry* VI. and even in the reign of Queen *Elizabeth*, yet Judge *Blackstone* observes, *it was used as an engine of state, not of law;* and upon the assassination of the Duke of *Buckingham* by *Felton* in the reign of *Charles* I. it was proposed in the privy council to put the assassin to the rack, in order to discover his accomplices; but the Judges being consulted declared unanimously, to their own honour and the honour of the *English* law, that no such proceeding was allowable by the laws of *England.* But in all ages and countries where this inhuman and unreasonable process has been in use, men of enlightened minds, so far as they have had occasion to mention it, have borne testimony against it; principally, however, on account of its uncertainty as a criterion of truth. Among the ancients it will be sufficient to name *Cicero* and *Quintilian*, and among the moderns the Marquis *Beccaria.** But in discountenancing

State
v.
Hobbs and
Strong.

---

\* *Tamen, illa tormenta gubernat, dolor moderatur natura, cujusque tum animi tum corporis, regit quæsitor, flectit libido, corrumpit spes, infirmat metus ; ut in tot rerum angustiis nihil veritati loci relinquatur.* M. T. C.

*Omnium quidem incertorum suspiciones pessime semper à corporibus ; nec bene de cujusquam moribus illam partem corporis interroges, quæ non animo sed dolore respondet.* Quintilian.

In a note under the preface to the second edition of the State Trials, there are several quotations from the fragments of *Julius Paulus, lib. 5. sentent. recept. tit. 14. de questionibus ha-*

State
v.
Hobbs and
Strong.

Vermont Stat.
vol. 1. p. 33.

this ordeal by this Court, its inhumanity has, if possible, a greater weight than its absurdity.

But it is unnecessary to enlarge. The 10th article of the Declaration of the Rights of the inhabitants of the State of *Vermont*, declares, " That in all prosecutions for criminal offences, a person hath a right to be heard by himself and his counsel; to demand the cause and nature of his accusation; to be confronted with witnesses; to call for evidence in his favour, and a speedy public trial by an impartial Jury of the country; *nor can he be compelled to give evidence against himself,* nor can any person be justly deprived of his liberty, except by the laws of the land, or the judgment of his peers."*

---

*bendis. Si suspicione aliqua reus urgeatur, adhibitis tormentis de sociis et sceleribis suis confiteri compellitur.—Reus evidentioribus argumentis oppressus repeti in quæstionem potest, maxime, si in tormenta animum corpusque duravit.* And lib. 1. section 23. *Res est fragilis, et periculosa, et quæ veritatem fallit; nam plerique patientia, sive duritia tormentorum, ita tormentum contemnunt, ut ex primi veritas nullo modo possit; alii tantâ sunt impatientia ut in quovis mentiri, quam pati tormenta, velint; ita fit; ut etiam vario modo fateantur, ut non tantum se verum etiam alios comminenter.*

See also *Beccaria* on Crimes and Punishments. Judge *Blackstone,* in his Commentaries, quotes from this author what he styles an *exquisite piece of raillery.* He says the Marquis has proposed this problem with a gravity and precision that are truly mathematical. " The force of the muscles and sensibility of the nerves of an innocent person being given, it is required to find the degree of pain necessary to make him confess himself guilty of a given crime."

* This article in the Declaration of Rights may be traced as *ab ovo* from the *English Magna Charta,* although the rights of

In this concise and luminous disp. · of the rights **State**
of the citizens of this State, especially the penul- **v.**
timate clause, all compulsory process to enforce an **Hobbs and Strong.**
acknowledgment of guilt is for ever excluded, not
only from our judicial proceedings, but all attempts
of individuals to extort confession by bodily suffer-
ing is reprobated. For it may be observed, that if
the trial by torture might be essayed for the disco-
very of truth, it certainly would be more safe and *Vide ante,* vol.
proper, that it should be regulated by law and ad- 1. p. 36.
ministered by the officers of government, than to be
indiscriminately applied, and restrained only by the
moderation or caprice of individuals.

The Court sentenced the culprit to pay a fine to
the State treasury.

---

the subject are better understood and more clearly defined than
at the date of this celebrated instrument. The 29th chapter of
*Magna Charta*, 9th of *Henry* III. declares, that " *Nullus liber
homo capiatur*, *vel imprisonetur*, *aut disseisietur de libero tene-
mento suo*, *vel libertatibus vel liberis consuetudinibus suis*, *aut ut-
lagetur*, *aut exuletur*, aut aliquo modo destruatur, *nec super eum
ibimus*, *nec super eum mittemus*, *nisi per legale judicium parium
suorum*, *vel per legem terræ.*" Which words, " *aliquo modo de-
struatur*," according to Sir *Edward Coke*, (2 *Inst.* 48 ) include
a prohibition not only of killing and maiming, but *also of tor-
turing*, and of every oppression by colour of an illegal autho-
rity.

For the more *especial* clause we are indebted to the common
law maxim, *Nemo teneatur seipsam accusare.....Reporter.*