### In re E. T. C., Juvenile

[449 A.2d 937]

No. 311-80

Present: Barney, C.J., Billings and Hill, JJ., and Larrow, J. (Ret.), Specially Assigned

Opinion Filed June 24, 1982

*John J. Easton, Jr.,* Attorney General, *Edwin L. Hobson, Jr.,* Assistant Attorney General, and *Sienna Walton,* Law Clerk (On the Brief), Montpelier, for Plaintiff-Appellee.

*Andrew B. Crane,* Defender General, *William A. Nelson,* Appellate Defender, and *Jacqueline Majoros,* Law Clerk (On the Brief), Montpelier, for Defendant-Appellant.

**Billings, J.** This is an appeal by a fourteen-year-old boy from a juvenile court order committing him as a delinquent child to the custody of the Commissioner of Corrections.

Three juveniles, who resided at a group home in Stowe, Vermont, in the custody of the Department of Social and Rehabilitation Services, were suspected of breaking into two condominiums located across the highway from the group home. The home has a contract with the Department of Social

and Rehabilitation Services to care for juveniles adjudicated in need of care and supervision and placed in the custody of the Department. The director, who is the head houseparent, has served as director since 1976 and has lived and worked with the appellant since that time.

The Vermont State Police investigated the break-in and after talking with the director all were convinced that the three juveniles residing at the home were involved. The director arranged for the troopers to return to the home to talk to the suspects after they returned from school. Upon their return the director sent the juveniles to their rooms. Subsequently each of the juveniles was interviewed separately by two troopers in the director's office in the presence of the director or a member of his staff. Upon his entering the room an officer advised each juvenile of his *Miranda* rights and according to the trooper the juvenile here involved acknowledged that he understood his rights and agreed to speak. After the *Miranda* rights were given an officer stated that he could have a "custodian" present. At that point the director, who was present at the time this juvenile was interviewed, stated that he was the custodian while they were at the home. At no time prior to the interview did the director consult with the juvenile or ascertain if he understood his rights, although he encouraged the juvenile to cooperate with the police and indicated that things would go easier if he did. The director also expressed his belief that it was in the juvenile's best interest to be "straight." Although present, the director did not participate further in the interview and indicated that he had no recollection if the juvenile actually waived his rights. He made no effort to call anyone to represent the juvenile or indicate as custodian that he expressly waived the juvenile's rights. As a result of the officer's questioning the juvenile made statements inculpating him in the breaking and entering at the condominiums.

At the subsequent delinquency hearing the juvenile moved to suppress the statements, but after a hearing thereon the trial judge found that there had been a voluntary waiver of rights and that the director had acted as custodian of the juvenile in advising him. From this ruling the juvenile appeals claiming that the confession should have been suppressed: (1) because of the denial of the juvenile's right to

consult with an "interested adult" before deciding whether to waive or assert his right to counsel and his privilege against self-incrimination; and (2) because, in the totality of the circumstances, he did not voluntarily, intelligently, and knowingly waive his right to counsel and his privilege against self-incrimination. Because of our disposition of the first issue, we do not consider the second claim of error.

Although the United States Supreme Court has limited the Fifth and Sixth Amendment *Miranda* rights of a juvenile under the United States Constitution to silence, consultation with an attorney, and the presence of an attorney at any interrogation the juvenile agrees to, *Fare* v. *Michael C.*, 442 U.S. 707 (1979), this Court has long recognized the existence of a related but independent right under chapter I, article 10 of the Vermont Constitution, *State* v. *Hobbs*, 2 Tyl. 380, 382–83 (Vt. 1803). Being free, as we are, to interpret the precise meaning of our own constitutional equivalent so long as no federal proscriptions are transgressed, *State* v. *Ludlow Supermarkets, Inc.*, 141 Vt. 261, 268, 448 A.2d 791, 794–95 (1982), and recognizing the inability of a juvenile to choose, without advice, among alternative courses of legal action, we have approved the summoning of a juvenile's representative prior to questioning, *State* v. *Crepeault*, 126 Vt. 338, 341, 229 A.2d 245, 247, *cert. denied*, 389 U.S. 915 (1967), *appeal dismissed*, 390 U.S. 38 (1968), and have held that a minor accused of a crime cannot waive counsel without a guardian or a responsible advisor, *In re Dobson*, 125 Vt. 165, 167, 212 A.2d 620, 621 (1965).

Although our prior cases apply only to waivers in court, we now hold that the same principles apply to police interrogation of juvenile suspects. The reasons for this application are well summarized by the Indiana Supreme Court:

> The concept of establishing different standards for a juvenile is an accepted legal principle since minors generally hold a subordinate and protected status in our legal system. There are legally and socially recognized differences between the presumed responsibility of adults and minors. Indeed the juvenile justice system . . . is substantially different in philosophy and procedure from the adult system. This State, like all the others,

has recognized the fact that juveniles many times lack the capacity and responsibility to realize the full consequences of their actions. As a result of this recognition minors are unable to execute a binding contract, unable to convey real property, and unable to marry of their own free will. It would indeed be inconsistent and unjust to hold that one whom the State deems incapable of being able to marry, purchase alcoholic beverages, or even donate their own blood, should be compelled to stand on the same footing as an adult when asked to waive important . . . rights at a time most critical to him and in an atmosphere most foreign and unfamiliar.

*Lewis* v. *State,* 259 Ind. 431, 437–38, 288 N.E.2d 138, 141–42 (1972) (citations omitted).

█ Therefore, the following criteria must be met for a juvenile to voluntarily and intelligently waive his right against self-incrimination and right to counsel under chapter I, article 10 of the Vermont Constitution: (1) he must be given the oportunity to consult with an adult; (2) that adult must be one who is not only genuinely interested in the welfare of the juvenile but completely independent from and disassociated with the prosecution, e.g., a parent, legal guardian, or attorney representing the juvenile; and (3) the independent interested adult must be informed and be aware of the rights guaranteed to the juvenile. *Commonwealth* v. *Barnes,* 482 Pa. 555, 560, 394 A.2d 461, 464 (1978); *Commonwealth* v. *Roane,* 459 Pa. 389, 394, 329 A.2d 286, 288 (1974); *Lewis* v. *State, supra,* 259 Ind. at 439, 288 N.E.2d at 142.

In the present case the director of the group home did not, on the record here, participate in the juvenile's decision to waive his rights. Although present it was shown that he was not paying attention and could not remember if the juvenile in fact waived his rights. See *Commonwealth* v. *Smith,* 472 Pa. 492, 499–502, 372 A.2d 797, 800–02 (1977). Nor did the director independently consult with the juvenile or ascertain if the juvenile understood the alternatives open to him. The only conversation was in the atmosphere of the interrogation room. There was no meaningful consultation by the director

with the juvenile as this could only occur in the absence of police pressures. *Hall* v. *State,* 264 Ind. 448, 452, 346 N.E.2d 584, 587 (1976). A private consultation should be provided. *Commonwealth* v. *Roane, supra,* 459 Pa. at 396, 329 A.2d at 289. Moreover, the director coerced the juvenile by implying it was best to "come clean" with the police, raising the inference that the result would be more favorable to the juvenile if he followed that course of action.

■■  Under these circumstances, the trial court was in error in not granting the juvenile's motion to suppress inculpatory statements. Waiver will not be presumed from a silent record absent a showing at least of the assistance of an independent, impartial, responsible, interested adult consulting with the juvenile.

*Reversed, order adjudicating the juvenile to be a delinquent vacated and remanded.*

**Larrow, J.** (Ret., Specially Assigned) (Concurring in result). I am in full agreement with the result reached by the majority in this case, and with the minimum protections afforded a juvenile being subjected to police interrogation. I also agree that the actions of the director houseparent, or lack thereof, do not meet the standards enunciated. But I cannot agree with the implication that a person in the status of the director here could ever be held to possess the independence and impartiality which the majority holding requires.

I am willing to "invade the thicket" into which we here venture. Fundamental fairness requires it. But such invasion should, if at all possible, leave a clear trail for future interrogations to follow. The indicated course of conduct should not vary from case to case, and adequate protection for the juvenile should not be afforded mere lip service. No "director" or "houseparent" employed by or under contract with the state can, in my view, be considered either impartial or independent. He differs only in slight degree from the prison warden, and very few of them are, from my observation, consulted by the prison inmate working on his habeas corpus.

It should be made clear that the status of the "director," in itself, precludes any finding by the trial court that minimum

protection standards have been met. Foxes should not be subject to individual evaluation; as a class they should be disqualified as poultry custodians.