# State of Vermont v. Bradley I. Piper

[468 A.2d 554]

No. 82-075

Present: Billings, C.J., Hill, Underwood, Peck and Gibson, JJ.

Opinion Filed October 17, 1983

John J. Easton, Jr., Attorney General, and *Elizabeth Grant Rome*, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Andrew B. Crane*, Defender General, and *William A. Nelson*, Appellate Defender, Montpelier, for Defendant-Appellant.

**Gibson, J.** After trial by jury, defendant was found guilty of operating a motor vehicle on a public highway in a careless and negligent manner. 23 V.S.A. § 1091(a). On appeal, defendant contends that the trial court erred in admitting into evidence certain statements he gave to the investigating officer. We disagree and affirm the conviction.

The pertinent facts are as follows. As defendant was driving to work on June 12, 1981, he saw a backhoe approaching on the highway with its stabilizer bars extended. He swerved to the right to avoid the backhoe and collided with a car ahead of him that had stopped for road construction. The force of the impact drove the front car into another automobile that was pushed across the centerline where it was hit by a third, oncoming vehicle.

At the time of the accident the investigating officer obtained basic information only. On June 17, 1981, defendant, then age 17, was asked by the officer to come to the police station to give a complete statement about the accident. He appeared at the station on June 20, 1981, and stated that just before the collision he had "looked back to see if the car behind him had missed the backhoe." In effect, he admitted that his attention had been diverted, at least momentarily, from the road ahead.

Prior to trial, defendant moved to suppress this statement on the ground that the officer failed to give him *Miranda*

warnings before he was questioned. *Miranda* v. *Arizona*, 384 U.S. 436, 444 (1966), requires that a defendant about to undergo a custodial interrogation first be told that "he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed."

Although the motion was untimely, the trial judge conducted a hearing "[s]o as not to prejudice the defendant." Based upon evidence produced at the hearing, the court found that defendant went to the police station voluntarily, was not under arrest or detention by the officer, and was, at all times during the investigation, free to leave. The trial court concluded, and it is not contested by the parties, that there was no custodial interrogation and, therefore, that no *Miranda* warnings were required. The motion to suppress was denied.

Defendant argues that under *In re E. T. C.*, 141 Vt. 375, 449 A.2d 937 (1982), he should have been afforded the opportunity to have an "interested adult" present when his statement was taken. The interested-adult rule gives a juvenile the opportunity to consult with an interested, informed and independent adult before deciding whether to waive or assert his right to counsel and his privilege against self-incrimination. Defendant contends that this rule applies in all situations in which a police officer questions a juvenile and is not limited to those interrogations that are "custodial" as defined by *Miranda*. Under this theory, any police investigation involving a juvenile would require the presence of an adult before questioning of that juvenile could proceed. Defendant would apply this principle to any person who is under the age of eighteen years.

## I.

*In re E. T. C.* was decided on June 24, 1982, after both the motion to suppress was denied and the trial in this matter was concluded. A threshold question, therefore, is whether *In re E. T. C.* applies retroactively in this case.

In *State* v. *Shattuck*, 141 Vt. 523, 529, 450 A.2d 1122, 1125 (1982), this Court adopted the common law rule that judicial decisions announcing a new rule of law will be given effect to cases pending on direct review. In approving this lim-

ited retroactivity, the Court noted that the state's interest in avoiding retrials of cases not yet final at the time of a change in law is outweighed by the avoidance of unjust convictions. *Id.* at 530, 450 A.2d at 1125–26.

Here, there is ample justification for following the rule of limited retroactivity articulated in *Shattuck.* This case is before us on direct appeal from the district court and involves an important constitutional question involving the rights of minors who " 'hold a subordinate and protected status in our legal system.' " *In re E. T. C., supra,* 141 Vt. at 378, 449 A.2d at 939 (quoting *Lewis* v. *State,* 259 Ind. 431, 437–38, 288 N.E.2d 138, 141–42 (1972)). Defendant is entitled to a consideration by this Court of whether the important safeguards announced in *In re E. T. C.* will apply in his case. See also *Commonwealth* v. *Barnes,* 482 Pa. 555, 557 n.2, 394 A.2d 461, 462 n.2 (1978) (cases on direct appeal entitled to retroactive application of the interested-adult rule).

## II.

E. T. C. was fourteen years of age and a resident of a group home for juveniles adjudicated in need of care and supervision. He was suspected of breaking into two nearby condominiums and was questioned at the group home by two state police officers, who first advised him of his *Miranda* rights. In spite of his right to remain silent and the presence of the juvenile home director, who acted as "custodian," E. T. C. made inculpatory statements which were later admitted at trial.

This Court held that those statements were erroneously admitted because the director did not adequately participate in the juvenile's decision to waive his constitutional rights. Under the Vermont Constitution, chapter I, article 10, a Vermont juvenile may waive his privilege against self-incrimination and his right to counsel only if the following conditions have been met:

> (1) he must be given the opportunity to consult with an adult; (2) that adult must be one who is not only genuinely interested in the welfare of the juvenile but completely independent from and disassociated with the prosecution, e.g., a parent, legal guardian, or attorney representing the juvenile; and (3) the independent interested

472

adult must be informed and be aware of the rights guaranteed to the juvenile.

*In re E. T. C., supra,* 141 Vt. at 379, 449 A.2d at 940.

Although *In re E. T. C.* dealt with the appeal of a fourteen-year-old boy from a juvenile court proceeding, and used the word "juvenile" throughout, we have no difficulty applying the concepts of that opinion to all minors. The underlying philosophy of *E. T. C.* is set forth in a quotation from the Indiana Supreme Court which bears repeating here.

> The concept of establishing different standards for a juvenile is an accepted legal principle since minors generally hold a subordinate and protected status in our legal system. There are legally and socially recognized differences between the presumed responsibility of adults and minors. Indeed the juvenile justice system . . . is substantially different in philosophy and procedure from the adult system. This State, like all the others, has recognized the fact that juveniles many times lack the capacity and responsibility to realize the full consequences of their actions. As a result of this recognition minors are unable to execute a binding contract, unable to convey real property, and unable to marry of their own free will. It would indeed be inconsistent and unjust to hold that one whom the State deems incapable of being able to marry, purchase alcoholic beverages, or even donate their own blood, should be compelled to stand on the same footing as an adult when asked to waive important . . . rights at a time most critical to him in an atmosphere most foreign and unfamiliar.

*In re E. T. C., supra,* 141 Vt. at 378–79, 449 A.2d at 939 (quoting *Lewis* v. *State, supra* (citations omitted)). The need for the presence of an interested adult was thus seen as a broad one, extending to all who are minors in the eyes of the law.

Some states have adopted the interested-adult rule by statute. See, e.g., Colo. Rev. Stat. § 19-2-102 (3) (c) (I) (1973) ; N.C. Gen. Stat. § 7A-595 (a) (3) (1981). Others have done so by judicial decision. See, e.g., *Lewis* v. *State, supra; State ex rel. Dino,* 359 So. 2d 586, 592 (La. 1978) ; *Commonwealth* v.

*Smith,* 472 Pa. 492, 372 A.2d 797 (1977). To protect the unsophisticated minor from an unknowing and unintelligent waiver of constitutional rights, these states, explicitly or implicitly, align the right to consult with an interested adult with the right to be given *Miranda* warnings.

The purpose of the rule is to guard against improvident waivers resulting from the minor's lack of sophistication or experience. In many cases, a mature decision cannot be made by a minor who is isolated, ignorant of his rights or intimidated by his surroundings. The rule is an attempt to guarantee that his decision is as well considered as that of an adult under similar circumstances.

*In re E. T. C.* does not clearly articulate the point at which a juvenile's right to consult with an interested adult arises, although the defendant in that case had been given *Miranda* warnings and may well have been under custodial interrogation.

We now hold that such right accrues to a person under the age of eighteen years at the commencement of a custodial interrogation by the police. This right shall accrue simultaneously with the right to be given *Miranda* warnings—"when the individual is first subjected to police interrogation while in custody at the station or otherwise deprived of his freedom of action in any significant way." *Miranda* v. *Arizona, supra,* 384 U.S. at 477.

Defendant would have us extend the rule to cover all situations in which minors are questioned by the police. We find this position untenable. The burden on law enforcement officials would far outweigh the benefit accruing to minors. The police would face a significant handicap if, before questioning any witness who is a minor, they had to summon an interested adult to the station or scene. The difficulty in producing such an adult could cause unwarranted and prejudicial delay in investigatory situations when time is often of the essence.

Defendant, although clearly suspected of wrongdoing by the police, was not "in custody" at the time the incriminating statements were made to the officer. This finding by the trial court is not challenged on appeal. We conclude, therefore,

that there was no error in admitting defendant's statements into evidence.

*Affirmed.*