**UNITED STATES of America ex rel. Gilbert CRIST, Petitioner-Appellee,**

v.

**Michael LANE, Respondent-Appellant.**

No. 83–3289.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 24, 1984.

Decided Oct. 1, 1984.

As Amended on Denial of Rehearing and Rehearing En Banc Dec. 14, 1984.

Hugh Stevens, Public Defender of Cook County, Chicago, Ill., for petitioner-appellee.

David E. Bindi, Asst. Atty. Gen., Chicago, Ill., for respondent-appellant.

Before WOOD and COFFEY, Circuit Judges, and HENLEY, Senior Circuit Judge.*

COFFEY, Circuit Judge.

This appeal arises from the granting of a writ of habeas corpus in which the petitioner alleges his convictions for attempted murder, armed robbery, and armed violence were improper because of questionable comments by the prosecutor during closing argument. We reverse the decision of the district court.

## I.

On the afternoon of June 27, 1980, the victim, Anthony Russell, entered the hallway of a public housing project in Chicago, Illinois. He was carrying a bag of clothing belonging to his girlfriend, a resident in the building. While in the hallway Russell heard a voice say "stop, come here." He turned and saw a man about five feet away rapidly approaching him and pointing a small caliber pistol. As he ran toward the rear exit to escape, he heard four or five shots fired. After he left the building, he heard two more shots, one of which struck him in the back. He continued running for approximately 100 feet and fell. His assailant followed him out of the building, shouted something, fired twice in the air, and ran off carrying the bag of clothing.

Drew and Michael Lee, friends of Russell, witnessed the shooting. They came to Russell's aid, helped him into the building, and called the police. Based on his two encounters with the assailant in the hall-

---

* The Honorable J. Smith Henley, Senior Circuit Judge for the United States Court of Appeals for the Eighth Circuit, is sitting by designation.

way and outside the building, Russell described his assailant as a short, stocky black man, between five feet two and five feet five inches tall, 160 to 170 pounds, and 27 to 30 years of age.

A few days later, Russell received a phone call informing him of the whereabouts of his assailant and giving a description of his dress as well as the license number of his vehicle. Russell reported this information to the police. Officer Vucko went to the location in response to the information given in the phone call and saw a man fitting the description given by Russell. The individual was observed holding a jacket with the butt of a gun protruding out of the jacket pocket. Officer Vucko placed the man under arrest and seized the old, beat-up, seven shot .22 caliber pistol.

Russell and Lee were brought to the police station to view a lineup. The lineup consisted of four people: at least one other person was wearing clothing fitting the assailant's description, as well as two others who were approximately the same height and build as the assailant.[1] Russell and Lee identified the petitioner, Gilbert Crist, as his assailant. Michael Lee, prior to his identification of the assailant, was advised that Russell had previously identified the petitioner. It should be pointed out that at the time Lee viewed the

petitioner through a two-way mirror, the petitioner was the only person in the lineup. Motions to suppress the identification testimony of both Russell and Lee were filed. The petitioner does not contest the ruling of the Illinois state trial court that the lineup wherein Russell identified petitioner was not suggestive. The trial court did agree, however, to suppress Lee's identification.

The comments which are the subject of this appeal were made during closing argument at a trial in which Crist presented no evidence. Russell testified on behalf of the Government that the hallway in which he first encountered the assailant was well lit. He further testified that he "only got a quick glimpse" of his assailant in the hallway and observed him again for about ten seconds outside the building. He was able to clearly see a gun and described it as a .22 caliber pistol, kind of old looking, with paint chipped off the barrel. Crist's defense relied on attacking the credibility of the prosecution witness, Russell. The comments made during the closing argument are set out in the district court's opinion, in *United States ex rel. Crist v. Lane*, 577 F.Supp. 504 (N.D.Ill.1983).

In his direct appeal to the Illinois Appellate Court, the Petitioner argued, among other claims,[2] that the Prosecutor improp-

---

**1.** Although Crist did not challenge the lineup in his petition for habeas corpus, on appeal Crist disputes the number of persons in the lineup wearing a blue shirt and black pants. A claimed violation of due process of law in the conduct of a confrontation depends on the totality of circumstances surrounding it. *Stovall v. Denno*, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967). "The 'totality of circumstances' reference is a reminder that there can be an infinite variety of differing situations involved in the conduct of a particular lineup .... The police are not required to conduct a search for identical twins in age, height, weight or facial features. If an Eskimo were to be involved in a burglary ... it is not to be expected that the sheriff will seek to locate or to send to the Arctic for tribesmen who could pass as brothers." *Wright v. State*, 46 Wis.2d 75, 86, 175 N.W.2d 646, 652 (1969). According to Crist, the lineup photographs, which were included in the record before the state appellate court, show that only Crist was so dressed. The Illinois

Appellate Court in its description of the lineup said that the petitioner and one other individual in the lineup wore a blue shirt and black pants. The state appellate court, upholding the finding of the trial court that the lineup was not suggestive, held that the "defendant had not raised any facts that would lead it to dispute the findings of the trial court." Whether one or two persons were dressed in a blue shirt and black pants is a factual question; the state court's finding of fact must be presumed true absent a contrary showing by the petitioner. *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). The petitioner offered nothing in support of his contention. We agree with the rulings of the state courts that the lineup was not suggestive and did not violate Crist's constitutional rights.

**2.** In addition to challenging the lineup in which Russell identified him, *see* n. 1, *supra*, petitioner also argued that the trial court erred in denying his motion to quash his arrest and to suppress evidence; that Russell's testimony was so unsat-

erly commented on the evidence, on the law, and on the defendant and his counsel thus depriving him of a fair trial. The Illinois Appellate Court found that the contents of the prosecutor's argument did not rise to the level of reversible error and also pointed out that any comments not timely objected to during trial were deemed waived.

In his original petition for habeas corpus, Crist alleged as the sole ground for relief that the prosecutor improperly commented on the petitioner's failure to testify. After the respondent filed a motion for summary judgment, Crist amended the petition asserting a due process claim based on eight separate objectionable comments [3] and filed a motion for summary judgment against the respondent.

Without specifically ruling on Crist's motion to amend, the district court granted the respondent's motion for summary judgment. 570 F.Supp. 999. The district court held that the prosecutor's comment that Russell's testimony was "uncontradicted and undenied" did not impair Crist's Fifth Amendment rights. According to the court, the comment did not focus the jury's attention on Crist's failure to testify because the evidence could just as easily have been addressed by two eyewitnesses that Crist did not call. Thus, the comment might very well have focused on the defendant's failure to present evidence in rebuttal rather than the defendant's failure to testify. *C.f. United States v. Hastings*, 461 U.S. 499, 103 U.S. 1974, 1984 n. 6, 76 L.Ed.2d 96 (1983) (Stevens, J., concurring).

Secondly, the prosecutor's comment was a reply to a statement by defense counsel in which he argued "Gilbert Crist pled not guilty in this case. He didn't have to plead not guilty. He could have pled guilty but chose to plead not guilty and by that fact alone he's telling you that he did not commit these crimes." The district court held that the prosecutor's reply, "That was Mr. Fox [defense counsel] testifying. That was not the defendant testifying. That was Mr. Fox testifying," was permissible under the invited response doctrine. On these grounds, the district court concluded that Crist's Fifth Amendment rights had not been impaired and granted summary judgment against Crist.

■ After Crist filed a motion to reconsider, the district court filed a second opinion and discussed the merits of the due process claim. The district court found that in one comment the prosecutor implicitly accused defense counsel and the defendant of intimidating a witness.[4] The district court also found that other comments vouched for the credibility of Russell, the complaining witness, and the strength of the prosecutor's case. In addition, the district court found that the prosecutor's choice of language was unprofessional. Applying the test of *United States v. Carter*, 720 F.2d 941 (7th Cir.1983), the district court held that the statements were so inflammatory and prejudicial to the petitioner as to deprive him of a fair trial when viewed in the context of the trial as a whole because the State's case depended

---

isfactory as to raise a reasonable doubt of petitioner's guilt; and that the trial court erred in entering judgment and imposing sentence on the four counts of aggravated battery and the armed violence count since the counts of aggravated battery arose from the same act as the count of attempted murder. These arguments were not raised in Crist's petition for habeas corpus.

3. Although the district court's opinion discusses only eight comments in its decision, Crist lists nine in his appeal to this court. We have reviewed the other comments Crist objected to before the trial court and on appeal and agree with the district court that they lack merit.

4. In his argument, defense counsel commented on the prosecution's failure to call Michael Lee, the witness whose lineup identification had been suppressed. The prosecutor responded by pointing out that the defendant could have subpoenaed Michael Lee just as easily as he could have had he so desired. The prosecutor also suggested that some witnesses do not testify because they are afraid. He immediately followed this comment with the statement, "I don't know why Michael Lee is not here." We fail to see how this comment accused defense counsel or the defendant of anything much less could it properly be considered as intimidating a witness.

upon the identification by Russell while the prosecutor's comments, which villified Crist, also bolstered Russell's credibility. Even though the Illinois Appellate Court found that Crist had waived his objections to some of the comments, the district court held that Crist had not waived his grounds for appeal because: (1) it would be unreasonable to require more objections during the closing argument; (2) the comments had to be considered to evaluate the nature and tone of the whole rebuttal; and (3) under *People v. Dailey*, 51 Ill.2d 239, 243, 282 N.E.2d 129, 131 (1972), the Illinois courts "will consider prejudicial arguments made without objection of counsel if as a result thereof the parties litigant cannot receive a fair trial." The district court in its opinion also referred to *People v. Shepard*, 114 Ill.App.3d 598, 602–03, 70 Ill.Dec. 348, 449 N.E.2d 222, 224–25 (1983), in which the same prosecutor made similar remarks.[5] In that case, the Illinois court commented that the "statement by the prosecutor [was] reprehensible and uncalled for" and that "[p]erhaps some reports to the Attorney Registration and Disciplinary Commission are required to provide an antidote for this virulent condition." Apparently concluding that this prosecutor habitually made objectionable comments during closing argument, Judge Shadur found that the prosecutor had engaged in a willful and deliberate course of prosecutorial misconduct, filed a copy of his opinion with the Illinois Supreme Court Attorney Registration and Disciplinary Commission, and subsequently granted Crist's motion for summary judgment. We hold that Judge Shadur's ruling in granting Crist's motion for summary judgment was improper.

## II.

Crist's Fifth Amendment argument may be disposed of summarily. It is well-established that principles of comity require a state prisoner to present his claims to the appropriate state tribunal before seeking relief in federal court. *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). A state prisoner may not for the first time bring a federal habeas corpus claim which was not previously brought on direct appeal in the state court absent a showing of cause and actual prejudice. *United States ex rel. Spurlark v. Wolff*, 699 F.2d 354, 361 (7th Cir.1983). The petitioner never argued[6] to the state court the issue that the prosecutor's comments violated his Fifth Amendment right to remain silent and thus this issue was waived under the Illinois law. Ill.Rev.Stat. 110A § 341(e)(7) (1981).[7] We affirm the district court's denial of the writ holding that the argument was waived. Although we hold that any error was waived, we do disagree with the district court's Fifth Amendment analysis of this comment. Defense counsel's argument that by pleading not guilty Crist was asserting his innocence misstates the law. Crist merely was forcing the government to meet its burden of proof. When defense counsel misstates the law, it is not improper for the prosecutor to reply. *United States ex rel. Clark v. Fike*, 538 F.2d 750, 759 (7th Cir.1976). The prosecutor's response in this case merely clarified the defense counsel's misstatement and was invited by defense counsel. If this argument had not been waived, we would hold the comment did not infringe upon Crist's Fifth Amendment

---

5. Crist brought this case to the court's attention in his Memorandum of Law in Support of Petitioner's Motion for Summary Judgment and in reply to Respondent's Motion for Summary Judgment.

6. Crist argues that the Fifth Amendment claim was before the Illinois court because the court asked, in one question, whether the federal Constitution was implicated. We refuse to read a Fifth Amendment argument into such a sparse exchange.

7. The district court's reliance on *Dailey* is misplaced. *Dailey*, which found waiver from a failure to object, merely restated the plain error rule. Illinois cases holding that issues not argued in an initial brief are waived are legion. *See, e.g., Will v. Will Products, Inc.*, 109 Ill. App.3d 778, 65 Ill.Dec. 430, 441 N.E.2d 343 (1982); *Orrico v. Beverly Bank*, 109 Ill.App.3d 102, 64 Ill.Dec. 701, 440 N.E.2d 253 (1982).

rights because the point of the statement was merely to distinguish between evidence and the defense counsel's argument.

A district court in habeas corpus review may take either or both of two actions when it finds that comments made by an attorney were improper. It may report the prosecutor to the disciplinary board, *United States v. Hastings*, 461 U.S. 499, 103 S.Ct. 1974, 1979 n. 5, 76 L.Ed.2d 96 (1983), and also, if the court finds that the comments did in fact deny the defendant due process, it may grant the writ of habeas corpus. *Smith v. Phillips*, 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). When the alleged improper conduct of the prosecutor in the state court fails to deny the defendant a fair trial, the district court should limit its response, if it believes that a response is warranted, to recommending that the appropriate state body undertake disciplinary action. *Hastings*, 103 S.Ct. at 1978–79. By limiting its response to disciplinary action, the court preserves judicial integrity and deters violation of the recognized right to a fair trial, *id.*, without punishing society for the misdeeds of the prosecutor. *Smith*, 455 U.S. at 219, 102 S.Ct. at 947. The heart of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial when viewed in its entirety, not the culpability of the prosecutor. *Id.* The appropriate inquiry, therefore, is not whether the prosecutor's conduct is conduct which "is undesirable, erroneous, or even 'universally condemned,' but [whether] it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Cupp v. Naughton*, 414 U.S. 141, 146, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). The focus of federal due process review is to ensure that alleged improper prosecutorial argument does not warp the factfinding function of the jury by deflecting its attention away from consideration of the evidence presented at trial. *Smith*, 455 U.S. at 217, 102 S.Ct. at 946. The essence of due process is fundamental fairness. The Constitution guarantees a fair trial, not a

perfect one. *Jentges v. Milwaukee County Circuit Court*, 733 F.2d 1238, 1244 (7th Cir.1984). A trial is fundamentally fair if it results in a verdict reached through consideration of evidence properly admitted and which is untainted by improper influences. Thus, it is the totality of the effect of the alleged errors, not their mere presence or their number, which gives rise to, or defeats, a due process claim. *Id.* at 1242.

The appellant argues that the district court erred in disregarding the defendant's failure to object to some of the comments.[8] We must point out that the district court's reliance on *Dailey*, which restated the plain error rule without applying it, was misplaced. If the existence of a plain error rule meant that federal courts need not respect the contemporaneous objection rule, regardless of whether the state court engaged in plain error review, then *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1976), would be rendered a nullity. Unless the state court ignores a procedural default and reaches the merits, a habeas corpus petitioner must satisfy the cause and prejudice requirements of *Sykes* to present the waived objection in the federal courts. *Weber v. Israel*, 730 F.2d 499 (7th Cir.1984). In this case, the state court held that any "comments not specifically objected to are waived." Secondly, the district court erred when it held that "[i]t would be unreasonable to require more than the eight objections defense counsel lodged to a single closing argument rebuttal." The contemporaneous objection requirement is imposed by the State, *see, e.g., Hehir v. Bowers*, 85 Ill.App.3d 625, 40 Ill.Dec. 918, 407 N.E.2d 149 (1980); *Grabmer v. American Airlines, Inc.*, 81 Ill.App.3d 894, 37 Ill.Dec. 103, 401 N.E.2d 1196 (1980), and "encourages the result that [state trial] proceedings be as free of error as possible." *Wainwright v. Sykes*, 433 U.S. 72, 91, 97 S.Ct. at 2508 (1977). Federal courts have no authority to modify much less to dispense with this rule. Nor should federal habeas corpus be used to undermine the

---

**8.** The comments were numbered 3, 4, and 6 in the district court's opinion.

contemporaneous objection rule. *See id.* at 88–92, 97 S.Ct. at 2507–09. Whether eight objections are enough is a matter for the Illinois courts, not this court, to decide.[9] When the district court dispensed with the contemporaneous objection requirement, therefore, it failed to recognize the proper limits of its power and the authority of the state courts. Finally, the district court erred in considering the three unobjected comments "to evaluat[e] the nature and tone of the whole rebuttal." Once a question of whether a serious error has been committed has been presented to the reviewing court, it should focus its inquiry into the alleged error's effect on the totality of the trial; it should not comb the record for unpreserved errors on which to base its judgment. As we stated earlier in this opinion, it is the total effect of the alleged errors, not their presence or their number, which gives rise to, or defeats a due process claim. *Jentges,* 733 F.2d at 1242. A court should not "fly speck the record" by combing it for unpreserved errors, as in the instant case, to decide whether a defendant received a fair trial.

Examination of the record[10] and the district court opinions reveals that, the district court overstated any prejudice the prosecutor's comments may have caused Crist. Because the defendant did not present evidence, the case rested on Russell's identification of his assailant; to prevail Crist was required to convince the jury that Russell's identification was unreliable. We now analyze the evidence to determine if in fact the jury verdict was reached because of the prosecutor's comments.[11]

To convict Crist, the jury was required to find that Russell's identification of Crist was accurate and in fact they must have done so. Russell had a brief opportunity to view his assailant during the initial encounter under optimum conditions. When Russell first saw the petitioner, he was only five feet away and walking towards him. He was not masked and the lighting conditions were excellent. Based upon this encounter and the ten second period of observation outside the building, Crist described the man as a short, stocky black man, between five feet two and five feet five inches, 160 to 170 pounds, and 27 to 30 years of age. He described the gun as a .22 caliber pistol, kind of old looking, with paint chipped off the barrel. As the Supreme Court observed in *Neil v. Biggers,* 409 U.S. 188, 200, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972), a description which includes "the assailant's approximate age, height, weight, complexion, skin texture, build, and voice, might not have satisfied Proust but was more than ordinarily thorough." Russell's detailed description of both the man and the gun convinces us, as it did the jury, that he had an adequate opportunity to observe. Petitioner's state appellate brief admits that the identification was made while Russell was in the hospital before Russell received the phone call identifying the assailant; therefore, we hold that this description was not influenced by the phone tip or the lineup. The petitioner strains credibility when he asks us to believe that both Crist, who was identified by Russell, and his gun just happen to match the descriptions. It is clear

---

**9.** Illinois does not require a specific objection to be registered to every instance of alleged misconduct when they are numerous and a continuing objection has already been noted. However, the Illinois Appellate Court, which thoroughly reviewed the record in this case, held that the comments not timely objected to were waived.

**10.** We were limited as to our review of the facts, as was the district court, because the state court trial transcript was not filed by either party, nor ordered by the district court. The only record of the facts giving rise to the issues now before this court comes from the Illinois appellate court opinion and petitioner's state appellate briefs.

**11.** We read the district judge's decision as invoking two separate tests to determine whether Crist's due process rights were denied. The district court judge initially determined that the prosecutor's remarks were so inflammatory and prejudicial that they denied Crist a fair trial. The district court held on an alternative ground that the prosecutor's comments in fact evidenced a deliberate course of misconduct. However, the appropriate inquiry is not whether the prosecutor's conduct is undesirable but only whether the defendant was denied due process. *Cupp,* 414 U.S. at 146, 94 S.Ct. at 400. We decline the district court's invitation to conduct a separate inquiry.

beyond a reasonable doubt that the jury would have returned a verdict of guilty even if the prosecutor had not made the questionable comments. Thus, we hold that Crist was not deprived of his right to a fair trial.

The judgment of the district court granting the writ of habeas corpus is REVERSED.