2003 VT 99

**STATE of Vermont v. Sean WADE**

[839 A.2d 559]

No. 01-318

¶ 1. October 28, 2003. The Windham County State's Attorney appeals from the Windham District Court's dismissal of an aggravated assault conviction. The case was dismissed to sanction the Windham County State's Attorney's Office for a discovery violation, as well as repeated violations in other cases. We conclude that the trial court abused its discretion by dismissing the conviction because the discovery violation did not prejudice defendant, and therefore we reverse.

¶ 2. On June 26, 2000, Windham County State's Attorney Dan Davis filed charges against defendant Sean Wade for aggravated assault arising from an altercation in a Bellows Falls bar. Wade got into an argument with another bar patron, a scuffle ensued, and Wade hit the victim several times over the head with a beer bottle. Wade claimed he acted in self defense and feared for his life, believing that the victim had a gun.

¶ 3. Trial was set for April 25 and 26, 2001. In October 2000, the court convened a status conference and inquired about the parties' discovery progress. Davis informed the court that his office had disclosed to the defense everything the court's discovery order required him to disclose. Nevertheless, during cross-examination of the investigating officer at trial, the defense learned that two other officers were present at the scene following the incident. After the prosecution rested, the defense orally moved to dismiss the charges, citing the State's failure to disclose the identity of the other two officers during discovery. Davis defended the omission by explain-

ing that he had not spoken with the officer before the morning of trial, and suspected that no one in his office had done so either. Davis said he relied on a form his office gives to the police to obtain the identification of all witnesses to an alleged offense, and that, in Wade's case, the form did not show that other officers were present at the scene. The court informed the parties that it would take Wade's motion to dismiss under advisement and recessed for a short break.

¶ 4. When the court reconvened, Wade's counsel informed the court that during the break Davis had learned the names of the two previously undisclosed officers and had provided them to the defense. Through his inquiries, Davis also learned that a written report and a videotape of defendant's arrest existed. Neither piece of evidence had been disclosed or provided to the defense during discovery. Davis provided a copy of the written report to the defense and to the court, which reviewed the report in camera. The court instructed the state's attorney to make the two officers available for deposition before trial the following morning so the defense could discover if they had any relevant information, and deferred ruling on Wade's motion to dismiss.

¶ 5. The next day, the parties informed the court that Wade's defense team had reviewed the report, watched the videotape, and obtained additional information about the incident from the two previously undisclosed police officers. Regarding the overnight discovery, the parties told the court that they had prepared a stipulated statement by one of the officers to be read to the jury. The parties agreed that the other officer would testify in person. At Wade's request, and without objection from the State, the court postponed its ruling on the motion to dismiss until after the jury returned its verdict.

¶ 6. The jury eventually found Wade guilty. After the verdict, the parties filed post-trial memoranda on the motion to dismiss. Wade's counsel argued for dismissal on the grounds that the discovery violation in Wade's case was part of a longstanding pattern of neglect and misconduct in discovery matters by members of the Windham County State's Attorney's Office. To demonstrate the alleged pattern of discovery abuse, the defense memorandum identified ten prosecutions in the Windham District Court where the State's discovery practices were a problem. On May 10, 2001, the trial court granted Wade's motion. The court found Davis's discovery violation in Wade's case "clear, serious, and inexcusable." The violation was not an isolated incident, the court noted, but was part of "a pattern of neglect in discovery practices." Citing seven of the ten cases Wade identified in his memorandum, plus three additional cases prosecuted in the Windham District Court, the court found that the pattern of discovery misconduct began in 1999 and continued even after the state's attorney's omission in this case became known.[1] The discovery violations the state's attorney and some of his deputies committed included late disclosure of exculpatory evidence, in some cases a year to sixteen months late. The discovery violations resulted in admonishments, continuances, evidentiary exclusions, and dismissals.

¶ 7. Although the court found a pattern of discovery misconduct over the years, it found that in Wade's case the State's late disclosures did not prejudice Wade because he used the untimely disclosed

---

[1] The court found that while Wade's motion to dismiss was pending, the State disclosed the existence of crucial evidence in a petit larceny prosecution — a victim's statement alleging an offense date different from the date in the information. The disclosure came on the first day of jury trial and sixteen months after the discovery deadline had passed.

evidence at trial. The court also found, however, that the prosecution's dilatory discovery practices in case after case caused system-wide prejudice in Windham County. It noted that Davis had responded to the charges of discovery misconduct in Wade's case by blaming the relevant investigating law enforcement officers. Describing its action as "extraordinary," the court found that its prior admonitions and escalating sanctions had failed to cure the state's attorney's discovery problems. The court concluded that dismissal of the prosecution against Wade, with prejudice, was necessary to accomplish the goals of the discovery rules. The State timely appealed the court's ruling.

¶ 8. Although Davis admits that he violated V.R.Cr.P. 16 in this case by not obtaining relevant information from the investigating officer within the discovery deadline, he does not concede that his office has demonstrated "a pattern of neglect in discovery practices."

¶ 9. We review the trial court's ruling on Wade's motion to dismiss for an abuse of discretion. See *State v. Passino*, 161 Vt. 515, 521, 640 A.2d 547, 550 (1994) (Supreme Court reviews trial court's sanctions for discovery violations under abuse-of-discretion standard). The trial court abuses its discretion when it exercises it on grounds that are clearly unreasonable or untenable. *State v. Parker*, 149 Vt. 393, 401, 545 A.2d 512, 517 (1988). Here, although we are sympathetic to the trial court's apparent frustration with the state's attorney, we conclude that the court abused its discretion by rejecting the jury's verdict and dismissing the case against Wade.

¶ 10. The state's attorney argues that dismissal in this case was an abuse of the court's discretion because defendant did not show prejudice flowing from the prosecution's discovery violation. The State articulates the correct legal standard. Even if a defendant establishes a violation of the prosecution's discovery obligations, the defendant still must demonstrate that the violation prejudiced his defense in some meaningful manner to justify relief. *State v. Jones*, 160 Vt. 440, 446, 631 A.2d 840, 845 (1993); *Parker*, 149 Vt. at 405, 545 A.2d at 519; *State v. Sird*, 148 Vt. 35, 39, 528 A.2d 1114, 1116 (1987); *State v. Lombard*, 146 Vt. 411, 416, 505 A.2d 1182, 1185 (1985); *State v. Cheney*, 135 Vt. 513, 515, 380 A.2d 93, 95 (1977); see also V.R.Cr.P. 52(a) (Court must disregard errors that do not affect defendant's substantial rights); *State v. Sherwood*, 174 Vt. 27, 31-32, 800 A.2d 463, 466 (2002) (unless police misconduct prejudiced defendant, dismissal is not warranted). There is no real dispute that Wade did not meet that standard in this case. Nevertheless, Wade and amicus curiae American Civil Liberties Union Foundation of Vermont insist that notwithstanding the lack of prejudice, dismissal was warranted to deter future prosecutorial misconduct. We disagree. Tossing out a conviction in the absence of prejudicial error to the defendant is not permitted under any of our cases. Further, as the United States Supreme Court explained in *United States v. Hasting*, "deterrence is an inappropriate basis for reversal ... where means more narrowly tailored to deter objectionable prosecutorial conduct are available." 461 U.S. 499, 506 (1983); see also *In re F.E.F.*, 156 Vt. 503, 515, 594 A.2d 897, 905 (1991) (discovery sanctions should not be harsher than necessary to fulfill goals of discovery). We conclude that dismissal of a prosecution after a jury's guilty verdict to redress a nonprejudicial discovery violation exceeds the bounds of the court's discretion. Reversal is, therefore, required.

¶ 11. While any justice or judge can, of course, refer a complaint against a lawyer to the Professional Responsibility Board, we regret that the concurrence has ignored the requirements of confidentiality set forth in our Administrative Order No. 9, Rule 12, and has done so in

the public forum of a Supreme Court decision.[2]

*Reversed and remanded for further proceedings consistent with the reinstated jury verdict.*

¶ 12. **Johnson, J.,** concurring. I agree with the Court that we must reinstate Wade's conviction because the prosecutor's discovery violation did not actually prejudice his defense. The majority opinion is incomplete, however, because it offers no remedy for the pattern of discovery abuse and neglect established by the facts the trial court found. This Court is obliged to refer the prosecutor's conduct to our Professional Responsibility Program for investigation and appropriate action given the facts the trial court found below. Thus, I concur with the Court's judgment to reverse Wade's conviction, but I refer this matter for further action under the Professional Responsibility Program rules.

¶ 13. I begin with the facts as found by the trial court because the state's attorney did not dispute them before the trial court or in this Court.[3] See *Bevins v.*

---

[2] The concurrence justifies the referral to the Professional Responsibility Board by noting that this Court has made such a referral in a previous case, *State v. Hohman*, 138 Vt. 502, 506, 420 A.2d 852, 855 (1980). Appellant's first claim of error in *Hohman* was the trial court's failure to disqualify the state's attorney for alleged unethical pretrial conduct. We held the court erred in denying the motion to disqualify and that it was error for the state's attorney to fail to disqualify himself. Concomitant to our decision, we referred the matter to the Professional Conduct Board. In the case at bar, the only legal issue is whether the court erred in dismissing a jury verdict of guilt without a showing of prejudice.

[3] The State asserts that it was "blind sided" by the trial court's reliance on

*King*, 147 Vt. 203, 206, 514 A.2d 1044, 1046 (1986) (trial court's unchallenged findings are binding on appeal); *State v. Piper*, 143 Vt. 468, 473-74, 468 A.2d 554, 557 (1983) (trial court's unchallenged finding that defendant was not in custody rendered defendant's statements admissible); *State v. Badger*, 141 Vt. 430, 434, 450 A.2d 336, 339 (1982) (relying on facts undisputed by State to decide issue regarding suppression motion).

¶ 14. The district court's findings show that as early as 1999, the court, presided over by Judge Hudson, issued a consolidated order in eighteen cases directing the Windham County prosecutor to disclose to the defense exculpatory evidence that the prosecution had not previously disclosed in those cases. That order put the state's attorney on notice that he must pay close attention to the fundamental discovery obligations of his office. Nevertheless, in January 2000, the Windham District Court dismissed three misdemeanor cases due to discovery violations. The following month, the court was faced with yet another discovery violation by the State. This time, a new deputy in the office withheld from a pro se defendant her knowledge that the

---

prior cases where the court imposed sanctions for the State's discovery violations. The record in this case establishes that Wade's dismissal memoranda discussed the prior cases, and that he requested dismissal of his conviction to sanction a pattern of discovery misconduct by the same prosecutor. The State did not contest the facts alleged in Wade's memorandum, nor could it. The facts were a matter of record in the Windham District Court. To the extent the state's attorney had an explanation for his office's repeated discovery violations, he failed to present it to the district court despite the opportunity to do so in the State's responsive memoranda. The State's claim that it was surprised by the court's order is meritless.

investigating police officer would testify at trial contrary to his sworn probable cause affidavit. That incident caused the court to meet with the state's attorney to discuss the problem so that he would take measures to prevent the repetition of similar conduct.

¶ 15. Although the deputy involved in that case improved over time, the Windham County State's Attorney's Office continued to neglect its discovery obligations. In September and November 2000, then again in February 2001, the court sanctioned the State for delayed discovery disclosures. In early May 2001, the State began a series of disclosures in another criminal proceeding one year after the discovery deadline had lapsed. In addition, while Wade's dismissal motion was pending before the trial court, the State disclosed the existence of a conflicting victim's statement in another case on the first day of jury trial — sixteen months after the end of discovery. Notably, Attorney Davis admits he violated V.R.Cr.P. 16 in this case by failing to obtain all the relevant and discoverable information from the investigating officer before the discovery deadline had lapsed.

¶ 16. The Court ignores the import of these undisputed facts, although Canon 3D(2) of the Code of Judicial Conduct provides that a "judge who receives information indicating a substantial likelihood that a lawyer has committed a violation of the Vermont Code of Professional Responsibility should take appropriate action." A.O. No. 10, Vt. Code of Judicial Conduct, Canon 3D(2). A judge cannot be disciplined for failing to do so, but Canon 3D(2) encourages judges to take some action when they obtain information that a lawyer may have violated the attorney ethics rules. See *id.*, Preamble; see also *Gonzalez v. State*, 768 S.W.2d 471, 473 (Tex. Ct. App. 1989) (Code of Judicial Conduct requires judge to refer prosecutorial misconduct for disciplinary action); *AIG Hawai'i Ins. Co. v. Bateman*, 923

P.2d 395, 402 (Haw. 1996) (Supreme Court compelled to refer parties' attorneys for disciplinary action where court concludes that attorneys probably violated rules of professional conduct in proceeding before it); *People v. Green*, 274 N.W.2d 448, 455 (Mich. 1979) (Williams, J., concurring and dissenting) (recommending that court order its clerk to report prosecutor's misconduct to grievance authorities for action); see also ABA Center for Professional Responsibility, *Annotated Model Rules of Professional Conduct* 581 (4th ed. 1999) (explaining that judges as lawyers are bound by both Rule 8.3 of Model Rules of Professional Conduct and Canon 3D(2) of Judicial Code of Conduct to report lawyer misconduct). The record in this case suggests a "substantial likelihood" that the Windham County State's Attorney has violated his ethical duties.

¶ 17. The State's discovery obligations in criminal cases arise from the Rules of Professional Conduct, as well as constitutional and statutory law. *Brady v. Maryland*, 373 U.S. 83, 87 (1963); V.R.Cr.P. 16; Vt. Rules of Prof'l Conduct R. 3.8(d). Indeed, prosecutors have a special ethical duty related to discovery that is not shared by the rest of the bar, that is, to timely turn over certain evidence to the defense. Vt. Rules of Prof'l Conduct R. 3.8(d). Fulfilling that duty may require prosecutors to make inquiries of the other investigators involved in the case, including the police. *Kyles v. Whitley*, 514 U.S. 419, 437 (1995). Judge Hudson emphasized that duty to the state's attorney in his consolidated order in 1999. Despite that order, the trial court found instances in the following years where Windham County prosecutors failed to make sufficient inquiries of the police in a timely manner causing late disclosure of evidence time after time. In addition, prosecutors, like all attorneys practicing in Vermont, must avoid conduct that "is prejudicial to the administration of justice." Vt. Rules of Prof'l Conduct R.

8.4(d). The trial court's undisputed findings show repeated instances of late discovery, which caused admonishments and dismissals, and which resulted in system-wide prejudice in Windham County. In sum, the facts the trial court found suggest that there is something seriously wrong with how the Windham County State's Attorney manages the discovery obligations of his office. The Court's opinion overlooks this problem despite Wade's urging here, joined by the American Civil Liberties Union Foundation of Vermont (ACLU), that we take some action to help resolve it.

¶ 18. I disagree, however, with the dismissal remedy Wade and the ACLU suggest because no actual prejudice resulted from the late disclosure in Wade's case. Rather than dismiss an otherwise valid conviction, the trial court could have referred the prosecution's conduct for disciplinary investigation and action. Indeed, this Court has previously referred a prosecutor for disciplinary action where the prosecutorial misconduct did not prejudice the accused's right to a fair trial. See *State v. Hohman*, 138 Vt. 502, 506, 420 A.2d 852, 855 (1980), *overruled on other grounds by Jones v. Shea*, 148 Vt. 307, 309, 532 A.2d 571, 572 (1987). In affirming Hohman's manslaughter conviction and referring the prosecutor's conduct to the Professional Conduct Board, we explained that "[u]nethical conduct, however worthy of censure, does not necessarily deprive a defendant of a fair trial, and is therefore distinguishable from prejudicial error." *Id.* Other courts have reached a similar conclusion. See, e.g., *United States v. Starusko*, 729 F.2d 256, 265 (3d Cir. 1984) (appropriate sanction for prosecution's discovery violation that did not prejudice defendant was referral of prosecutor for disciplinary action); *Suarez v. State*, 481 So. 2d 1201, 1206 (Fla. 1986) (disciplinary sanction against prosecutor rather than suppression of defendant's voluntary statement was appropriate remedy for

prosecutor's unethical conduct). Referring a prosecutor for disciplinary action when the prosecutor's misconduct does not prejudice the defendant "preserves judicial integrity and deters violation of the recognized right to a fair trial, without punishing society for the misdeeds of the prosecutor." *United States ex rel. Crist v. Lane*, 745 F.2d 476, 482 (7th Cir. 1984) (internal citations omitted).

¶ 19. Referring a prosecutor for disciplinary investigation and action for violating the government's discovery duties is not without precedent. For example, the Ohio Supreme Court suspended a prosecutor for six months for, among other things, failing to timely disclose the existence of exculpatory evidence to the defense. *Office of Disciplinary Counsel v. Jones*, 613 N.E.2d 178, 179-80 (Ohio 1993). The same court publicly reprimanded a prosecutor who did not timely turn over discovery to the defendant's counsel. *Cuyahoga County Bar Ass'n v. Gerstenslager*, 543 N.E.2d 491, 491 (Ohio 1989). In that case, the court determined that although the prosecutor did not act "knowingly," his practices were "grossly negligent and sloppy," and amounted to conduct that was prejudicial to the administration of justice, warranting a public reprimand. *Id.*; cf. *People v. Mucklow*, 35 P.3d 527, 535 (Colo. O.P.D.J. 2000) (adherence to office procedures is no defense to a violation of ethical rules where blind adherence to those procedures results in nonconforming conduct). In *People v. Mucklow*, a public censure was imposed on a prosecutor who violated Rule 3.8 of the Colorado Rules of Professional Conduct by not timely producing exculpatory evidence to the defense in two criminal prosecutions. 35 P.3d at 539.

¶ 20. The trial court — and defense counsel — did not pursue a referral to the Professional Responsibility Program to redress the pattern of discovery violations by the Windham County State's Attorney's Office. Indeed, we recognize

that it is difficult for trial judges to make complaints to the Professional Responsibility Program against lawyers with whom they have to work on a day to day basis. That neither defense counsel nor the trial judge here chose to make the referral does not mean that this Court should also decline to do so. We are more removed from the working relationship between district court judges and the attorneys practicing before them. I am, therefore, referring this matter to the Professional Responsibility Program for further investigation and appropriate action.

¶ 21. The majority criticizes the referral as a violation of the confidentiality requirement set forth in the rules governing the Professional Responsibility Program. See ante, at ¶ 11. But in State v. Hohman, this Court made its referral to the Professional Conduct Board public by including it in the Court's opinion notwithstanding the then-existing nondisclosure requirement. Hohman, 138 Vt. at 506, 420 A.2d at 855. Under the rules in effect at that time, all proceedings and records involving alleged attorney misconduct were confidential until the commencement of formal proceedings or until twenty-one days after the Court approved a public reprimand or censure without formal proceedings. See 12 V.S.A. App. VIII, A.O. No. 9, § 20 (Supp. 1986). In other words, after a complaint was filed with the Board, but before a finding of probable cause of an ethical violation and the beginning of formal proceedings, the Board and proceeding participants were required to keep the complaint confidential. Id. That provision did not, however, prevent the Court from making known that its concerns about the prosecutor's ethical propriety warranted investigation by the Professional Conduct Board. See Hohman, 138 Vt. at 506, 420 A.2d at 855.

¶ 22. Despite the majority's criticism in this case, the referral here does not violate the current nondisclosure provision in Rule 12(A) of the rules governing the Professional Responsibility Program. Rule 12(A) provides that "all proceedings and communications in connection with a complaint shall be confidential within the program" prior to the filing of formal disciplinary action. A.O. No. 9, Rule 12(A). Although worded differently from the confidentiality provision existing at the time of our Hohman decision, the intent is the same. The rule prevents those implementing the Professional Responsibility Program from disclosing information about an allegation of attorney misconduct after a complaint to that effect is filed with the Program, but before a finding of probable cause.

¶ 23. A public referral in a case like this is particularly important because this Court is ultimately responsible for overseeing the ethical conduct of attorneys admitted to practice in Vermont. Vt. Const. ch. II, § 30. Consequently, the Court must be "particularly vigilant" when reviewing cases where an attorney's conduct raises a substantial question about whether that conduct conforms to the rules of ethics we have promulgated to protect the public. Mucklow, 35 P.3d at 533; see also J. Levy, The Judge's Role in the Enforcement of Ethics — Fear and Learning in the Profession, 22 Santa Clara L. Rev. 95, 107 (1982) (the higher up the judicial structure the less pressure not to report ethical lapses of lawyers). Like the trial court, the justices of this Court are also bound by Canon 3D(2) of the Judicial Code of Conduct. Considering the record evidence of discovery violations by the Windham County State's Attorney's Office from 1999 through 2001, we owe it to the public, and the victims in the cases that were dismissed because of the State's discovery misconduct, to ask the Professional Responsibility Board to investigate whether the discovery violations identified in the trial court's order deserve sanction under the Rules of Professional Conduct. Reversing Wade's

conviction without addressing the allegations of misconduct found by the district court here is an affront both to the public in Windham County and to our duty under the Constitution to oversee the ethics of attorneys admitted to practice in Vermont.

¶ 24. My decision to refer this matter for investigation by the Professional Responsibility Program is also informed by the nature of the injury the referral seeks to redress. As the district court found, the repeated discovery violations caused system-wide prejudice to the criminal justice system in Windham County, even if the violation in Wade's individual case did not prejudice him. Indeed, had Wade been prejudiced by the late discovery in his case, the outcome of this case would likely be different. But the public nature of the harm the district court found requires a public response, and one that will best ensure that the State meets its discovery obligations in Windham County in the future.

¶ 25. Finally, I emphasize that a referral is not a determination by me or this Court that the Windham County State's Attorney has violated the Rules of Professional Conduct or that discipline is appropriate. The findings of the district court in this case raise "serious questions . . . as to the ethical propriety of the state's attorney's conduct," the standard we adopted in *Hohman*. 138 Vt. at 506, 420 A.2d at 855. Once the referral is made, a professional responsibility hearing panel must decide whether there has been an ethical violation and, if so, how to remedy it.

¶ 26. I am authorized to state that Justice Dooley joins in this concurrence.

Motion for reargument denied November 20, 2003.