### The PEOPLE of the State Of Colorado, Complainant,

v.

### Pamela F. MUCKLOW, Respondent.

### No. 00PDJ010.

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

Dec. 26, 2000.

Opinion issued by Presiding Disciplinary Judge ROGER L. KEITHLEY and Hearing Board members RICHARD P. HOLME, and HENRY C. FREY, both members of the bar. Hearing Board Member RICHARD P. HOLME dissents.

### OPINION AND ORDER IMPOSING SANCTIONS

*SANCTION IMPOSED: PUBLIC CENSURE*

This matter was heard on July 13, 2000 before the Presiding Disciplinary Judge ("PDJ") and two Hearing Board members, Richard P. Holme, and Henry C. Frey. Charles E. Mortimer, Jr., assistant Attorney Regulation Counsel, represented the People of the State of Colorado (the "People"). David R. Brougham represented respondent. The People's exhibits 1 through 7 and respondent's exhibits A, C and D were admitted into evidence by stipulation. The PDJ and Hearing Board heard testimony from the People's witnesses George R. Buck, Jr. and Pamela F. Mucklow ("Mucklow") and from respondent's witness Michael F. Green. Mucklow testified on her own behalf. The PDJ and Hearing Board considered the testimony and exhibits admitted into evidence, assessed the credibility of the witnesses and made the following findings of fact which were established by clear and convincing evidence:

## I. FINDINGS OF FACT

Pamela F. Mucklow ("Mucklow") has taken the oath of admission, was admitted to the bar of this court on October 14, 1994, and is registered upon the official records as attorney registration number 24710. Mucklow is subject to the jurisdiction of this court pursuant to C.R.C.P. 251.1(b).

Following her admission to the bar, Mucklow spent three years seeking a full time attorney position. During the three-year period she served in various volunteer positions, worked as a guardian *ad litem* and as an intern with the City of Aurora and later with the City and County of Denver. Mucklow was employed as a deputy district attorney in the 22nd Judicial District beginning in July 1997. She had not previously been employed as a deputy district attorney.

### The Skidmore Matter

In April 1998, John Skidmore ("Skidmore") was charged with second degree assault in violation of § 18–3–203, 6 C.R.S. (1998) in connection with a domestic disturbance. Mucklow was assigned to prosecute the case. Skidmore hired George R. Buck, Jr., ("Buck") to represent him. A preliminary hearing was scheduled in county court for Tuesday, May 19, 1998 at 1:30 p.m. at the courthouse in Cortez, Colorado.

On May 14, 1998, the district attorney's office received a letter from the complaining witness in the Skidmore case in which the complaining witness recanted the version of events which provided a basis for the criminal charges. On Friday, May 15, 1998 in preparation for the preliminary hearing the following Tuesday, Mucklow for the first time looked at the outer jacket of the Skidmore file and noted that no plea bargain had been extended to Buck. She telephoned Buck's office and left a message stating that the prosecution would accept a plea of guilty to assault in the third degree. Buck communicated the plea bargain to his client on Monday, May 18, 1998. There were no further discussions regarding the plea bargain.

Also on Monday, May 18th, while reviewing the Skidmore file for the preliminary hearing in more detail, Mucklow discovered the letter from the alleged victim of the assault. In the letter, the alleged victim recanted her allegation that Skidmore had assaulted her. Mucklow immediately recognized that the letter constituted exculpatory evidence which had to be provided to defense counsel. However, she decided that the letter and its contents was not material to the issues before the court at the preliminary hearing and, therefore, neither disclosure of the letter nor its contents was necessary prior to that proceeding. Mucklow determined, in light of the circumstantial evidence she intended to offer, that the exculpatory letter from the alleged victim would not alter her approach to the preliminary hearing nor would it alter the outcome. Mucklow perceived the letter to be just one more instance of a domestic violence victim recanting an earlier version of events after the passage of time. It was Mucklow's belief that such recanting letters were often instigated by the person charged with the criminal offense and therefore concluded that Buck probably already knew about it.[1] Notwithstanding her knowledge that the alleged victim had recanted her version of events, Mucklow neither modified nor withdrew the plea bargain she had previously extended to defense counsel.

At the appointed time on May 19, 1998, both Mucklow and Buck appeared in the courtroom for the preliminary hearing. Although Mucklow had sufficient time and opportunity to give Buck a copy of the letter or to advise him of it prior to the commencement of the preliminary hearing, she elected not to do so. Buck observed that the alleged victim was not present to testify. Consequently, he advised his client that without the victim's testimony, there was a strong likelihood that the case would not be bound over to district court on the felony charge of second degree assault but that it was probable that it would be bound over to county court on a misdemeanor charge of third degree assault, resulting in a county court trial to a jury of six rather than a district court

---

[1] Apart from her unsupported assumption that Buck knew about the letter, Mucklow had no other facts upon which to base such a conclusion.

trial to a jury of twelve. Buck advised his client that a jury of twelve was strategically more favorable to Skidmore than a jury of six. Based on this advice, Skidmore waived the preliminary hearing and requested that the matter be removed for trial to the district court in Montezuma County. The court bound the matter over to the district court.

Immediately following the preliminary hearing, Mucklow followed the normal office routine relating to disclosure of exculpatory documentation and placed the letter in the discovery workbasket to be provided to defendant's counsel. The letter was processed by the office staff and sent to opposing counsel via first class mail.

On May 21, 1998, two days after the preliminary hearing, Buck received a copy of the alleged victim's letter via first class mail from the district attorney's office. Buck recognized that Mucklow had delayed disclosure of the letter until after the preliminary hearing and moved for sanctions against the prosecutor's office stating that Mucklow failed to make timely disclosure to the defense of all evidence or information known to the prosecutor that tended to negate the guilt of the accused or mitigate the offense. Buck's motion referred specifically to the disclosure obligations set forth in Colo. R.Crim. P. 16 and Colo. RPC 3.8(d).[2] The district attorney's office thereafter offered to dismiss the case if Skidmore would withdraw the motion for sanctions. The charges against Skidmore were dismissed.

At the time of these events, Mucklow understood her obligations under The Rules of Professional Conduct to be the same as her obligations under Colo. R.Crim. P. 16 and controlling constitutional law. Mucklow could not clearly recall whether she noticed Buck's reference to Colo. RPC 3.8(d) in the motion for sanctions.

**2.** Both in his motion for sanctions and in his testimony in this proceeding, Buck stated that he would have given his client different advice prior to the preliminary hearing had he known of the letter and its contents beforehand. He would have asked for a continuance in order to subpoena the alleged victim to testify at the preliminary hearing and would have elicited testimony from her which would have exonerated Skidmore.

### The Stepbrother Sexual Abuse Matter

Five months after the Skidmore matter, Mucklow was assigned to a criminal matter involving an eleven-year-old girl who alleged that her stepbrother had sexually molested her. The stepbrother was charged with sexual assault on a child § 18–3–405, 6 C.R.S. (1999) (a class four felony) sexual assault on a child by one in a position of trust § 18–3–405.3, 6 C.R.S. (1999) (a class three felony) and sexual assault on a child as a pattern of behavior, § 18–3–405(2)(d), 6 C.R.S. (1999). In multiple interviews with different individuals, the child had described oral-genital contact occurring between her stepbrother and herself. Buck was appointed to represent the stepbrother.

A preliminary hearing was initially scheduled for September 22, 1998 and continued to October 21, 1998 upon Buck's motion to allow time to conduct discovery. Sometime during the morning of the preliminary hearing, Mucklow interviewed the alleged child victim with Donna Craig Rice ("Rice"), a volunteer victim advocate from the district attorney's office. Mucklow had arranged for Rice to be present for two reasons: to disclose information to defense counsel if necessary, and to lend support to the alleged victim. During the interview, the victim denied oral-genital contact ever occurring between herself and her stepbrother, did not remember it ever happening, and did not remember telling anyone it had occurred. She stated that there had been sexual conduct of a different nature—genital to genital contact and manual to genital contact—between herself and her stepbrother. Mucklow immediately recognized that the interview had generated information of an exculpatory nature which had to be disclosed to Buck. At a break in the interview, Mucklow spoke to Rice and asked her to prepare a memorandum reflecting the victim's altered version of events for disclosure to the defense.[3] Mucklow did not,

**3.** The memo, dated October 21, 1998 stated:

> [The alleged victim] denied her stepbrother … ever licked or kissed her vagina with his mouth. She stated she, [the alleged victim] never remembered this happening or telling this to anyone. She … also remembered an incident when … [he] rubbed his penis against her vagina while she was half asleep on the living room floor.

however, indicate to Rice that there was any urgency to the preparation of the memorandum or disclosure of the information to the defense. Rice left immediately after the conclusion of the interview.

Mucklow considered informing Buck of the changed victim version prior to the scheduled hearing but was concerned that the district attorney's office might be disqualified from the case if Buck called her as a witness during the preliminary hearing to testify regarding the interview. She discussed the matter with the District Attorney, Michael Green, and they agreed it would be better to avoid potential disqualification by disclosing the new version of events through direct examination of the child victim at the preliminary hearing rather than informing Buck of the change in the child victim's testimony prior to the hearing.[4]

The preliminary hearing was scheduled to start at 1:30 p.m. but was delayed until 2 p.m. Mucklow arrived early for the purpose of preparing the prosecution's other witness, David Sabin, for his testimony. In light of her knowledge that the child victim's version of events had changed and her concern that any changes would have to be adequately explained, Mucklow informed Sabin that she intended to elicit testimony from him that child victims of sexual abuse often alter their testimony. Buck arrived in the courtroom at 1:15 p.m. Mucklow, Rice and the child victim were also present at that time. Prior to the preliminary hearing, Mucklow did not disclose the child victim's change in testimony to Buck despite having the time and opportunity to do so.

During Sabin's testimony, Mucklow elicited testimony from him relating to child victims' general propensity to alter their version of events over the passage of time. Thereafter, during direct examination of the child victim, Mucklow elicited some, but not all, of the different facts from the child victim which had been discussed in the morning interview: the child victim stated that there

had been genital to genital and manual contact between herself and her stepbrother. The child victim was not asked and did not testify regarding her current denial of ever having had oral-genital contact with her stepbrother or her denial of ever telling anyone that she had. Upon hearing the new testimony, Buck objected and moved to strike the testimony stating that he had no prior knowledge of this evidence. The court overruled the objection and denied the motion to strike, but reprimanded Mucklow for not disclosing the testimony prior to the preliminary hearing:

> Ms. Mucklow: Your Honor, I submit that I'm fully aware of our obligation, that that was a discrepancy and I'm fully aware of my obligation to report that to Mr. Buck. I don't understand that Rule 16 requires me to call him up on the telephone and tell him about something right away....

> The Court: The fact is that you learned something that is inconsistent with (sic) prior statement. You saw Mr. Buck here, you had to wait for me because I had to drive someone to the airport. You could've said to him well, Mr. Buck, she said something different this morning to me that is in any of the reports, I think you should know about it, it is relevant for this case, as a professional courtesy, both as a professional courtesy and an ethical obligation ... you have the duty to do that, and I don't think, Ms. Mucklow, you can argue fast and loose with Rule 16. You also have rules of professional conduct that [require] you to do that, and I think that's just a better course of action.

> The Court: This came out as far as knowledge to you, what, four hours before the preliminary hearing – at least three hours before the preliminary hearing takes place. You know the fact is you can tell someone else in your office to relay that information to Mr. Buck, you see him outside, you can relay that information to him as well. I mean definitely as far as my attitude has

---

She also said her stepbrother ... touched her vagina with his hands.

4. Similar to her explanation of events in the Skidmore matter, Mucklow testified in this disciplinary proceeding that she thought Buck was

probably aware of the changes in the child victim's story based on her past experience that defendants commonly influence the victims to recant.

been on this, and what I've viewed as the District Attorney's office at the time was playing fast and loose with the rules of ethical conduct and the rules of discovery. . . .

At the conclusion of the preliminary hearing, the court ruled that it could not find as a matter of law that the alleged victim's statements were impossible or implausible, it found probable cause with regard to each of the charges asserted against the defendant and the court bound the matter over to district court for trial.

The day after the preliminary hearing, October 23, 1998, Buck received the memorandum from Rice via first class mail. Buck promptly filed a motion for sanctions. Although the district court denied the motion on the ground that the outcome of the preliminary hearing would not have been altered, it stated:

> [T]he prosecutor has an ongoing duty to disclose exculpatory information. That duty is not in any was (sic) a function of time. A prosecutor who learns of potential exculpatory material on the minute before a preliminary hearing has the same duty to disclose as though the information was found weeks earlier.

The charges against the stepbrother were eventually dismissed in January 1999.

## II. CONCLUSIONS OF LAW

Prosecutors, as governmental officials, face ethical obligations not shared by other lawyers. In *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967)(White, J., concurring and dissenting) the Supreme Court stated:

> Law enforcement officers have the obligation to convict the guilty and to make sure they do not convict the innocent. They must be dedicated to making the criminal trial a procedure for the ascertainment of the true facts surrounding the commission of the crime. To this extent, our so-called adversary system is not adversary at all; nor should it be. *Id.* at 256, 87 S.Ct. 1926.

In an earlier decision, *Berger v. United States,* 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935), the United States Supreme Court defined the special role of the prosecutor:

> [The prosecutor] is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor –indeed he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one. *Id.* at 88, 55 S.Ct. 629.

[T]he ethical rules that govern the legal profession single out prosecutors as the only participants who must adhere to a special duty beyond that of representing zealously their "client." Peter J. Henning, *Prosecutorial Misconduct and Constitutional Remedies,* 77 Wash. U.L.Q. 713, 727 (1999). The prosecutor labors under the pull of two divergent forces created by the ethical precepts. *Id.* One of these forces requires an attorney to advocate passionately the government's position, while the other pushes the prosecutor to seek a result that may not be exactly what the client and the attorney desire: a conclusion short of a criminal conviction. *Id.*

The prosecutor's special role and its importance is so ingrained in the fabric of the criminal justice system that prosecutors have been provided some measure of immunity for their official acts, whether proper or improper, due to the recognition that "professional discipline supplies an effective remedy" for prosecutorial misconduct. *Cf. Imbler v. Pachtman,* 424 U.S. 409, 428–429, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). Consequently, those charged with overseeing the ethical conduct of prosecutors must be particularly vigilant when reviewing their questioned conduct.

The Complaint in this disciplinary action presents two separate charges alleging violations of Colo. RPC 3.8(d) arising from Mucklow's conduct in disclosing exculpatory evidence to defense counsel.

Colo. RPC 3.8(d) provides:

The prosecutor in a criminal case shall:

(d) make timely disclosure to the defense of all evidence of information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense, and, in connection with sentencing, disclose to the defense and to the tribunal all unprivileged mitigating information known to the prosecutor, except when the prosecutor is relieved of this responsibility by a protective order of the tribunal.

The Colorado Rules of Professional Conduct do not define "timely disclosure" for purposes of Colo. RPC 3.8(d). Colo. RPC 3.8(d) was drawn from and is identical to Rule 3.8(d) of the ABA MODEL RULES OF PROFESSIONAL CONDUCT (1983). The Committee Comment to Colo. Rule 3.8 recognizes that the rule is based to a considerable extent on the ABA STANDARDS OF CRIMINAL JUSTICE RELATING TO THE PROSECUTION FUNCTION AND DEFENSE FUNCTION (3rd ed. 1993)("ABA Standards: Prosecution/Defense Function") and deals with a specialized area of law. The Comment makes clear that the definition of terms contained in Colo. RPC. 3.8 is to be consistent with the definition of terms contained in the ABA Standards: Prosecution/Defense Function.[5]

Standard 3–3.11 of the ABA Standards: Prosecution/Defense Function [6] provides in relevant part:

## Disclosure of Evidence by the Prosecutor

(a) A prosecutor should not intentionally fail to make timely disclosure to the defense, *at the earliest feasible opportunity*, of the existence of all evidence or information which tends to negate the guilt of the accused or mitigate the offense charged or which would tend to reduce the punishment of the accused. (emphasis added).

The Commentary to Standard 3–3.11 [7] provides:

### Withholding Evidence of Innocence

A prosecutor has the responsibility of a minister of justice and not simply that of an advocate.[8] This responsibility carries with it specific obligations to see that the accused is accorded procedural justice and that guilt is decided upon the basis of sufficient evidence, including consideration of exculpatory evidence known to the prosecution. This obligation, which is virtually identical to that imposed by ABA model ethical codes,[9] goes beyond the corollary duty imposed upon prosecutors by constitutional law.[10] The National District Attorneys Association similarly requires prosecutors to "disclose the existence or nature of exculpatory evidence pertinent to the defense." [11]

The Colorado Rules of Criminal Procedure incorporate similar but not identical language. Colo. R.Crim. P. 16 Part I(b), which governs criminal discovery and procedure before trial by the prosecution provides:

The prosecuting attorney shall perform his obligations under subsections (a)(1)(I) . . . *as soon as practicable* but not later than

**5.** The ABA Standards: Prosecution/Defense Function, however, are intended to offer guidelines for the implementation of reforms in the criminal justice system whereas The Colorado Rules of Professional Conduct are a mandatory code of professional conduct for attorneys in Colorado.

**6.** The ABA Standards: Prosecution/Defense Function have been cited favorably in Colorado. *See People v. May* 745 P.2d 218, 221 (Colo.1987); *People v. Terry*, 720 P.2d 125, 130 (Colo.1986).

**7.** The Commentary to Colo. RPC 3.8(d) incorporates in part the Commentary to ABA Standards: Prosecution/Defense Function Standard 3–3.11.

**8.** *See* ABA MODEL RULE OF PROFESSIONAL CONDUCT Rule 3.8 (1983), Comment; ABA MODEL CODE OF PROFESSIONAL RESPONSIBILITY EC7–13 (1980).

**9.** ABA MODEL RULE OF PROFESSIONAL CONDUCT 3.8(d); ABA MODEL CODE OF PROFESSIONAL RESPONSIBILITY DR7–103(B).

**10.** *See e.g., United States v. Agurs*, 427 U.S. 97, 110 n. 17, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

**11.** NDAA NATIONAL PROSECUTION STANDARD 25.4 (2nd ed.1991).

twenty calendar days after the defendant's first appearance at the time of or following the filing of charges. . . .

The terminology, "at the earliest feasible opportunity" and "as soon as practicable" contained in the ABA Standards: Prosecution/Defense Function and Colo. R. Crim P. 16(I)(b) respectively have the same substantive meaning. The prosecutor is required to provide exculpatory information and materials to the defense as soon as it is practicable or feasible to do so. The test for compliance with the timeliness requirement is an objective one.

The facts presented at trial of this matter established without question that Mucklow, in two separate cases, knew the information in her possession was exculpatory, had sufficient time prior to the preliminary hearing to disclose the information to the defense and knowingly chose not to do so. Although disclosure in both cases may have required Mucklow to deviate from normal office procedures and make extra effort to properly catalog the letter in the Skidmore case and expedite the preparation of the interview memorandum in the stepbrother sexual abuse case, it was both practical and feasible for her to do so. Strict adherence to general office procedures does not present a defense to violations of The Rules of Professional Conduct where blind adherence to those procedures results in nonconforming conduct.

In the Skidmore matter, Mucklow decided that the contents of the letter would not alter the outcome of the preliminary hearing, and believed that by providing it to defense counsel after the preliminary hearing she was adhering to the requirements of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10

L.Ed.2d 215 (1963) and its progeny. Similarly, in the stepbrother sexual abuse matter, she understood that the testimony was exculpatory in nature but decided it was not necessary to provide the information to opposing counsel prior to the preliminary hearing, intending, rather, to delay disclosure until direct examination of the child victim during the preliminary hearing.[12] She made that decision in order to protect the district attorney's office and avoid making herself a witness in the proceeding.

Mucklow contended in this disciplinary hearing that her conduct was in accord with the requirements of Colo. R.Crim. P. 16 and *Brady* and the interpretations given the criminal discovery rules by the Colorado courts. Mucklow's argument was founded upon her characterization that the information was not "material" to the preliminary hearing issues and therefore disclosure before the hearings was not required.[13] Her position is premised upon the theory that since no sanction was imposed in either of the Skidmore or stepbrother sexual abuse cases for a violation of Colo. R.Crim. P. 16, there can be no violation of Colo. RPC 3.8(d) and the charges against her must be dismissed. That argument reflects a misunderstanding of the different purposes underlying the rules governing professional conduct and those procedural rules implemented to satisfy constitutional requirements.

*Brady* and the cases which follow it articulate a constitutional proposition that defendants are entitled to be made aware of information in the possession or control of the state which is favorable to the accused. The constitutional principal is designed to

---

**12.** It is important for purposes other than deciding whether a violation occurred to note that Mucklow consulted with and obtained the direction of her employer, District Attorney Green, before she embarked upon this course of action.

**13.** Mucklow's materiality argument is unclear to some extent. Although she clearly argues that the undisclosed exculpatory information was not "material," she does not differentiate between materiality for purposes of *Brady* and evidentiary materiality. Materiality has a special meaning in the *Brady* due process context. *See Brady*, 373 U.S. at 87, 83 S.Ct. 1194. To be material under *Brady*, undisclosed evidence must be of sufficient

importance that, when viewed in the light of all of the evidence in the case, its presence or absence would affect the outcome of the proceeding. That definition of materiality is the one addressed in this decision. For evidentiary purposes, materiality refers to evidence which is, in some meaningful way, relates to the issues to be decided but is not necessarily outcome determinative. It bears a close relationship to relevancy under Colorado Rules of Evidence, Rule 401. There is no question that the undisclosed information in both the Skidmore and the stepbrother sexual abuse matters was material for evidentiary purposes.

insure that those charged with criminal conduct have full access to information tending to indicate their innocence or reduce the potential penalty to be imposed upon a finding of guilt. In *Brady*, the United States Supreme Court held:

> We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. *Brady*, 373 U.S. at 87, 83 S.Ct. 1194.

Failure to comply with the mandate of the *Brady* doctrine may result in the imposition of sanctions against the prosecution. The doctrine is not intended to punish society for the misdeeds of the prosecutor but the avoidance of an unfair trial of the accused.[14] *Brady*, 373 U.S. at 87, 83 S.Ct. 1194.[15] Consequently, sanctions against the prosecution under *Brady* may only be imposed if the court finds that the prosecutor has failed to timely disclose exculpatory information *and* the information not disclosed would have altered the outcome of the underlying criminal proceeding. *See Salazar v. People*, 870 P.2d 1215, 1221 (Colo.1994)(holding that a prosecuting attorney has both a statutory and a constitutional obligation to disclose to the defense any material, exculpatory evidence he possesses, *citing Brady* 373 U.S. at 87, 83 S.Ct. 1194 for the proposition that failure to disclose information helpful to the accused results in a violation of due process only where the evidence is "material" either to guilt or punishment); *People v. District Court*, 808 P.2d 831, 834 (Colo.1991)(holding that there must be a 'reasonable probability' that, had the evidence been disclosed to the defense, the result of the proceeding would have been different), *quoting United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)(holding that [a] 'reasonable probability' is a probability sufficient to undermine confidence in the outcome); *People v. Avery*, 736 P.2d 1233, 1237 (Colo.App.1986)(holding that the test to establish a violation of due process when evidence has been lost or destroyed is: (1) whether the evidence was suppressed or destroyed by the prosecution; (2) whether the evidence is exculpatory; and (3) whether the evidence is material to the defendant's case, *citing People v. Viduya*, 703 P.2d 1281 (Colo. 1985)). Both parts of the *Brady* test must be satisfied before sanctions are warranted in a criminal case.

Colorado Rule of Criminal Procedure 16 Part I, which was adopted to meet the *Brady* doctrine, governs the prosecutor's production of discovery to the defense. Colo. R.Crim. P. 16 requires disclosure by the prosecution of

---

**14.** The willfulness of the prosecutor is not considered in the constitutional analysis. *See Agurs*, 427 U.S. at 110, 96 S.Ct. 2392 (holding that the constitutional obligation [of the prosecutor] is [not] measured by the moral culpability, or the willfulness, of the prosecutor). If evidence highly probative of innocence is in his file, [the prosecutor] should be presumed to recognize its significance even if he has actually overlooked it. *Id.* See also *Brady* 373 U.S. at 87, 83 S.Ct. 1194 (holding that the suppression of evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution); *Brown v. Borg*, 951 F.2d 1011, 1015 (9th Cir.1991)(holding that when exculpatory evidence is withheld, [and the court's] attention focuses on its effect on the defendant's right to due process; the prosecutor's intentions are irrelevant).

**15.** Subsequent interpretation of *Brady* extends this concept beyond the trial to other stages of a criminal proceeding. *See People v. Alberico* 817 P.2d 573, 574 576 (Colo.App.1991)(upholding the trial court's finding that the prosecutor violated both Colo. R.Crim. P. 16 and *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) by failing to disclose exculpatory evidence in the form of a report of an interview of a witness by a lay investigator); *People v. District Court*, 790 P.2d 332, 337 (Colo.1990)(holding that under *Brady*, the prosecuting attorney must disclose to defense counsel any material or information within his possession or control which tends to negate the guilt of the accused as to the offense charged or would tend to reduce the punishment therefor); *People v. Smith*, 185 Colo. 369, 524 P.2d 607, 611 (1974)(quoting with approval Justice Fortas's concurrence in *Giles v. State of Maryland*, 386 U.S. 66, 87, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967), requiring that a court compel discovery not only of favorable evidence but of any evidence "which may ... be of material importance to the defense-regardless of whether it relates to testimony which the state has caused to be given at trial"); *People v. Adams County Court*, 767 P.2d 802, 803 (Colo.App.1988)(holding that under the current version of [Rule 16] the items set forth in Part (I)(a)(1) are to be made available to the defense "as soon as practicable").

all material and information set forth in Colo. R.Crim. P. 16 Part I(a), including: "(1) Police, arrest and crime or offense reports, including statements of all witnesses, the accused, and any codefendant." Disclosure does not depend upon whether the materials disclosed are to be presented at the preliminary hearing or at trial. *Adams*, 767 P.2d at 803.[16] These required disclosures are, by the terms of the rule, non-discretionary. *Id.* The *Adams* court emphasized:

> [W]e interpret the rule to require the prosecution to make available to the defense all non-discretionary material, as set forth in Colo. R.Crim. P. 16 Part I(a)(1), *whether or not it is relevant to preliminary hearing issues*. (emphasis added).

■■■■ A preliminary hearing is an early screening device conducted before an impartial judge to assure that only those charges for which the prosecution has evidence rising to the level of probable cause shall be permitted to proceed to trial. *People v. Noline*, 917 P.2d 1256, 1272 (Colo.1996). The preliminary hearing is intended to ... afford a defendant an opportunity, at an early stage of the criminal proceedings, to challenge the sufficiency of the prosecution's evidence before an impartial judge. *People ex rel. Farina v. District Court*, 185 Colo. 118, 522 P.2d 589, 590 (1974). The preliminary hearing is designed to weed out groundless or unsupported charges and to relieve the accused of the degradation and expense of a criminal trial. *Holmes v. District Court of Summit County*, 668 P.2d 11, 15 (Colo.1983). If the prosecuting attorney fails to establish probable cause at a preliminary hearing, the county court is empowered to dismiss the complaint. *People ex rel. Gallagher v. County Court*, 759 P.2d 859, 861 (Colo.App.1988). At the preliminary hearing, the prosecution has the burden of producing that quantum of evidence necessary to establish probable

cause to believe that a crime was committed and that it was committed by the defendant. *Holmes*, 668 P.2d at 15, *citing Quinn*, 183 Colo. 245, 516 P.2d at 422. The evidence must be viewed in the light most favorable to the prosecution, and all inferences must be resolved in favor of the prosecution. *People v. Holder*, 658 P.2d 870, 871–72 (Colo.1983). The credibility of the witnesses at a preliminary hearing may be considered only when, as a matter of law, the testimony is implausible or incredible. *Hunter v. District Court*, 190 Colo. 48, 543 P.2d 1265, 1268 (1975).

■■■■ Prior to the scheduled preliminary hearing in the Skidmore case, the complaining witness had recanted her earlier version of events. In the stepbrother sexual abuse case, the complaining witness had recanted portions of earlier statements and advanced new and different versions of prior events before the scheduled preliminary hearing. The recantation by the complaining witnesses in both cases raised questions regarding the credibility of their statements and was relevant to issues which could have been addressed by the court as part of its preliminary hearing screening process. Whether the credibility question was of sufficient magnitude or degree to affect the outcome of the preliminary proceeding is not relevant to a determination of compliance with Colo. RPC 3.8(d), although it would be relevant to a determination of whether a *Brady* violation had occurred.

The Rules of Professional Conduct, unlike the rule of law enunciated in *Brady*, are not premised upon minimal constitutional conformity. Rather, The Rules of Professional Conduct are intended to set forth minimum standards of professional conduct for attorneys licensed to practice law. In most instances, compliance with the Rules' provisions is tested against the conduct of the attorney, not the effect of that conduct upon others.[17] Colo. RPC 3.8(d) is such a rule.

---

**16.** The *Adams* court engaged in a detailed analysis of the history of Colo. R.Crim. P. 16 in Colorado. The analysis begins with *People v. Quinn*, 183 Colo. 245, 516 P.2d 420, 422 (Colo.1973), which barred any discovery prior to the preliminary hearing. *Quinn* was modified by *People v. Kingsley*, 187 Colo. 258, 530 P.2d 501 (1975) and Colo. R.Crim. P. 16 was amended to allow limited discovery prior to the preliminary hearing.

Under the *Kingsley* version of the Colo. R.Crim. P. 16, the prosecution was required to disclose certain materials set forth in Part I(a)(1), based on whether they were to be presented "at the hearing or trial." *Adams*, 767 P.2d at 803. This phrase no longer appears in the current version of Colo. R.Crim. P. 16. *Id.*

**17.** Compliance with some of The Rules of Professional Conduct do depend upon the effect of the

Because Colo. RPC 3.8(d) focuses only upon the attorney's conduct, unlike the requirements of *Brady* and the cases which apply its constitutional mandate, the effect of the questioned conduct upon the underlying criminal proceeding is not relevant for purposes of determining whether a violation of the rule transpired.[18]  *Cf. Kyles v. Whitley*, 514 U.S. 419, 437, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)(holding that the rule in [*People v.*] *Bagley* [473 U.S. 667, 105 S.Ct. 3375 (1985) ] (and hence, in *Brady* ) requires less of the prosecution than the ABA Standards for Criminal Justice, which call generally for prosecutorial disclosures of any evidence tending to exculpate or mitigate).

The comment to Disciplinary Rule 7–103 (which preceded Rule 3.8) acknowledges that the omission of a *Brady* type materiality requirement (*i.e.* material to the outcome of the proceeding) makes the prosecutor's ethical obligations broader than the prosecutor's due process obligation:

> [A]  disparity exists between the prosecutor's disclosure duty as a matter of law and the prosecutor's disclosure duty as a matter of ethics.  Disciplinary Rule 7–103(B) does not limit the prosecutor's ethical duty to disclose situations in which the defendant requests disclosure.  Nor does it impose a restrictive view of "materiality."  Disciplinary Rule 7–103(B) states that the prosecutor has a duty to make a timely disclosure of any evidence that tends to negate guilt, mitigate the degree of the offense, or reduce the punishment.  It appears possible, therefore, that a prosecutor may comply with the constitutional standards set forth in *Brady* and *Augurs [Agurs]*, and still be in violation of Disciplinary Rule 7–103(B).  Richard A. Rosen, *Disciplinary Sanctions Against Prosecutors for Brady Violations:  A Paper Tiger*, 65 N.C. L.Rev. 693, n. 115 (1987).

questioned conduct upon others.  *See* Colo. RPC 8.4(d)(engaging in conduct prejudicial to the administration of justice).

**18.**  The effect of noncompliance may be relevant and a factor to be considered in deciding upon an appropriate sanction should a violation of the rule be found.

*See State v. Harwood*, 94 Idaho 615, 495 P.2d 160, 162 (1972)(stating that Disciplinary Rule 7–103 and Ethical Consideration 7–13 impose a duty on the prosecution "to make available all evidence which tends to aid in ascertaining the truth").  To fulfill ethical obligations the prosecutor must disclose all exculpatory evidence ... whether or not the evidence presented or omitted is important enough, in the context of all of the evidence at trial, to warrant a reversal of the conviction.  Rosen, 65 N.C.L.Rev. 693 at 714.  An ethical violation can, and often will, be present even when due process is not violated.  *Id. See generally* Joseph R. Weeks, *No Wrong Without a Remedy:  The Effective Enforcement of the Duty of Prosecutors to Disclose Exculpatory Evidence*, 22 Okla. City U.L.Rev. 833 (1997).  Misconduct by a prosecutor may constitute a violation of applicable ethical rules, even when the misconduct does not mandate a sanction in the criminal case.  *People v. Reichman*, 819 P.2d 1035, 1037 (Colo.1991).

In *Committee on Professional Ethics v. Ramey*, 512 N.W.2d 569 (Iowa 1994) the respondent defended his failure to disclose police reports to the defense by arguing that the reports were not material, and therefore that he did not violate his prosecutorial duty under *Brady*.  The Iowa Supreme Court stated that "[t]he duty to disclose exculpatory evidence cannot be ignored because of a prosecutor's private belief that it is beside the point."  *Id.* at 572.

The sole question presented upon an alleged violation of Colo. RPC 3.8(d) is whether the conduct meets the requirements of the rule.  It does not depend upon the effect of any noncompliance.  In both the Skidmore and stepbrother sexual abuse cases, it was both practicable and feasible for Mucklow to disclose the exculpatory information prior to the preliminary hearing.  She did not do so.[19]

**19.**  In the stepbrother sexual abuse case, the district court found that although Mucklow had failed to promptly disclose the exculpatory information pursuant to Colo. R.Crim. P. 16, her failure to disclose would not have altered the outcome of the preliminary hearing and declined to impose sanctions.  In the Skidmore case, no preliminary hearing was conducted and no de-

Mucklow's decision to withhold production of the exculpatory information in both the Skidmore and stepbrother sexual abuse matters prior to the preliminary hearing because she believed the information would not change the outcome of the proceedings is not a valid reason to circumvent Colo. RPC 3.8(d). What constitutes timely disclosure depends on the facts and circumstances of each case. Mucklow's conduct in both the Skidmore and stepbrother sexual abuse case violated Colo. RPC 3.8(d).

## III. SANCTION/IMPOSITION OF DISCIPLINE

The PDJ and Hearing Board find that Mucklow's misconduct constitutes a violation of duties owed to the profession and the public. The ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) ("ABA *Standards*") are the guiding authority for selecting the appropriate sanction to impose for lawyer misconduct.

ABA *Standard* § 5.23 is applicable to Mucklow's actions in the Skidmore matter. It provides:

Reprimand is generally appropriate when a lawyer in an official or governmental position negligently fails to follow proper procedures or rules, and causes injury or potential injury to a party or to the integrity of the legal process.

██ With respect to the Skidmore matter, the uncontroverted evidence presented at trial established that Mucklow believed her duty to disclose exculpatory evidence was based only upon the constitutional duty to do so under *Brady* and codified in Colo. R. Crim P. 16. She was not aware of the broader requirements imposed by Colo. RPC 3.8(d). Mucklow's state of mind at the time she committed the violation in the Skidmore matter was, therefore, negligent.[20]

██ ABA *Standard* § 5.22 is applicable to Mucklow's actions in the stepbrother sexual abuse case. It provides:

termination was made whether the failure to disclose was in violation of Colo. R.Crim. P. 16.

Suspension is generally appropriate when a lawyer in an official or governmental position knowingly fails to follow proper procedures or rules, and causes injury or potential injury to a party or to the integrity of the legal process.

At the time of the stepbrother sexual abuse case respondent had been put on actual notice of her duty under Colo. RPC 3.8(d) by defense counsel in the Skidmore case, who had previously filed a motion for sanctions citing the rule and the duty imposed thereby. The term "knowingly" is defined in the introduction to The Colorado Rules of Professional Conduct to "denote actual knowledge of the fact in question. A person's knowledge may be inferred from circumstances." Respondent's subsequent violation of Colo. RPC 3.8(d), therefore, must be considered knowing.

Determination of the ultimate sanction to be imposed requires consideration of both mitigating and aggravating factors established by the evidence presented at the sanctions hearing. The PDJ and Hearing Board found and considered two factors in aggravation pursuant to ABA *Standards* 9.22: Mucklow engaged in a pattern of misconduct, *id.* at 9.22(c), and there were multiple offenses, *id.* at 9.22(d). The PDJ and Hearing Board considered the following factors in mitigation pursuant to ABA *Standards* 9.32: Mucklow had no prior disciplinary record, *id.* at 9.32(a); she had no dishonest or selfish motive, *id.* at 9.32(b); she was inexperienced in the practice of law, *id.* at 9.32(f), and she exhibited a cooperative attitude toward the proceedings.

In both the Skidmore and stepbrother sexual abuse cases, identifiable injury resulted from Mucklow's misconduct. In each case the defense was denied the opportunity to adequately prepare for the preliminary hearing.

There are no cases in Colorado to guide the PDJ and Hearing Board in the determination of an appropriate sanction, and few cases in other jurisdictions. In *Office of*

20. Unlike decisions resulting in *Brady* sanctions, the state of mind of the attorney is an important factor in deciding the appropriate discipline.

*Disciplinary Counsel v. Jones*, No. 92–32, slip op. at 4–6 (Dec. 4, 1992), 66 Ohio St.3d 369, 613 N.E.2d 178 (1993), the prosecutor represented the city in a criminal charge against the defendant on a charge of domestic violence. During the trial, counsel for defendant introduced two photographs depicting injuries to the defendant. The jury could not reach a verdict and the court declared a mistrial. At the commencement of the retrial, the exhibits previously introduced by defendant's counsel could not be located. Because the defense intended to introduce these exhibits at trial, defendant requested a continuance in order to locate the exhibits. The trial judge denied the request. The prosecutor was asked by the trial court if he had any knowledge as to the whereabouts of the exhibits. The prosecutor stated that he had no knowledge. During the noon recess, the prosecutor discovered the exhibits. Rather than take the exhibits to the courtroom, the prosecutor placed the exhibits in a plastic sleeve and gave them to a deputy clerk in the clerk of court's office. The prosecutor told the clerk that the sleeve belonged in the defendant's file and his case was "still being tried." Unaware that the sleeve contained the exhibits, the deputy clerk did not deliver the items to the courtroom. The prosecutor did not inform the court or defense counsel that he had located the exhibits. Prior to the conclusion of the trial, the bailiff discovered the exhibits in the clerk's office and brought them into the courtroom shortly before closing argument. The prosecutor was suspended for six months for knowingly failing to disclose the existence of evidence that tends to negate guilt, mitigate the degree of the offense or reduce the punishment. Unlike the *Jones* case, Mucklow's misconduct did not occur at or near trial.

In *Ramey*, 512 N.W.2d at 572, the Iowa Supreme Court indefinitely suspended an attorney's license with no possibility of reinstatement for three months where the attorney, acting as prosecutor, made a false representation to the court concerning evidence, and failed to disclose exculpatory evidence. In *Cuyahoga County Bar Ass'n v. Gerstenslager*, 45 Ohio St.3d 88, 543 N.E.2d 491 (1989) the respondent attorney was de-

termined in the contempt proceeding to have deliberately suppressed plainly exculpatory evidence that had the effect of allowing the criminal proceedings against the defendant to extend over many months when the case would probably have been dismissed had the records been produced when originally requested. The attorney was publicly reprimanded for failing to make timely disclosures of evidence that tended to negate the guilt of the accused in violation of DR7–103(B) and DR1–102(A)(5).

The PDJ and Hearing Board conclude that Mucklow's conduct in the Skidmore case warrants public censure. In the stepbrother sexual abuse case, the ABA *Standards* suggest that a period of suspension from the practice of law is warranted. However, it must be noted that Mucklow, an inexperienced prosecutor, conferred with her superior before she took action in that case. She relied upon her superior's advice, failed to timely disclose the exculpatory information and thereby violated Colo. RPC 3.8(d). Although it is every licensed lawyer's responsibility to understand and conform his or her conduct with The Rules of Professional Conduct, Mucklow did recognize a potential ethical problem, did seek guidance and interpretation from her superior and did not cause significant injury. The PDJ and Hearing Board conclude that under these circumstances, taking into account the mitigating and aggravating factors and recognizing that no prior Colorado disciplinary cases gave guidance to Mucklow, suspension, even for a short period of time, would be too harsh and is not necessary for the protection of the public.

## Dissent by RICHARD P. HOLME:

I respectfully dissent. The case against Respondent should be dismissed for failure to prove by clear and convincing evidence that Respondent violated Colo. RPC 3.8(d).

This disciplinary action arises from two criminal proceedings in which exculpatory information first came to the attention of the Respondent-prosecutor (a) the day before and (b) a few hours before scheduled preliminary hearings. Both involve allegations that

the new information should have been disclosed to defense counsel prior to the preliminary hearing and before any criminal charges were even bound over to the district court, much less set for trial. In each case, the exculpatory information was in the possession of the defendants' counsel within two or three *days* of the *first* time it came to the attention of the Respondent. Although the majority has been unable to cite any case standing for the proposition that facts such as these justify a conclusion that Colo. RPC 3.8(d) has been violated, the Respondent is held to have violated that Rule and is being publicly reprimanded.

The majority opinion adopts a rule of disclosure by prosecutors in criminal cases that goes beyond the requirements of due process, beyond the clearly understood meaning of Rule 16 of the Colorado Rules of Criminal Procedure and beyond any reported case in the United States. Its scope places at serious risk the license to practice law of any prosecutor who delays for a moment in disclosing information which may be exculpatory without allowing any period even to verify the validity of any such allegedly exculpatory information. This ruling places a substantial club over prosecutors in the hands of the defense which can be unrelated to the merits of the criminal case. Moreover, the majority decision places the disciplinary authorities in the position of overseeing, second-guessing, and ultimately exercising a continuous invisible hand over the prosecution of criminal cases.

The rule adopted by the majority, even if it were to be deemed correct, should only be adopted clearly, openly and in advance of its application by a specific rule-making proceeding conducted by the Colorado Supreme Court and its appropriate advisory rule committees after due and open deliberation.

Although I see nothing in the facts of this case that would warrant public discipline against Respondent, given the majority's determination that Respondent has violated Colo. RPC 3.8(d), I agree that the punishment should be a public reprimand. Unless the majority decision is reversed, its expansive view of a prosecutor's obligations will lead to disciplinary actions and injuries to the livelihood and professional reputations of prosecutors. Thus, it is crucial that this decision be made as public as possible so that all prosecutors might have notice of the far-reaching principle adopted herein. The overriding necessity to make this interpretation of Colo. RPC 3.8(d) more available, and to create the deterrent effect on prosecutors that is apparently being sought here, requires that this disciplinary action be made public.

The facts found by the majority involve few significant disputed facts, although the implications of some of them are worth further comment below. I agree with the majority that the central issue is whether, in either or both of the criminal cases at issue here, the admitted disclosure of all facts known by the Respondent, within two or three days after she herself first became aware of them and at the very outset of the criminal proceedings, was not "timely" as required by Colo. RPC 3.8(d). I would further add, that the issue must include the determination that the failure to disclose those facts immediately was "clearly and convincingly" untimely. C.R.C.P. 251.18(d).

It is useful to understand what this case does *not* involve:

- This case does *not* relate to a prosecutor who completely failed to disclose a fact that "tends to negate the guilt of the accused or mitigates the offense" (hereafter, for brevity, referred to as "exculpatory information"), as in *Committee on Prof'l Ethics v. Ramey*, 512 N.W.2d 569, 572 (Iowa 1994), or in *State v. Harwood*, 94 Idaho 615, 495 P.2d 160, 162 (1972)(reversing criminal conviction where the prosecutor, who was not being disciplined, failed to turn over crucial ballistics information), cited by the majority;

- It does *not* relate to a case where a prosecutor withheld exculpatory information until the trial was virtually completed, or in which the prosecutor delayed turning over exculpatory information because of any personal animus toward the defense counsel, as in *Office of Disciplinary Cnsl. v. Jones*, 66 Ohio St.3d 369, 613 N.E.2d 178 (1993);

- It does *not* involve a prosecutor failing to comply with court ordered disclosures that had the effect of allowing criminal proceedings to drag on for months longer than they otherwise would have, as in *Cuyahoga County Bar Ass'n v. Gerstenslager,* 45 Ohio St.3d 88, 543 N.E.2d 491 (1989);

- It does *not* involve a conviction of a greater crime or imposition of a more severe punishment than would otherwise have been given;

- It does *not* involve a case in which the prosecutor affirmatively mislead defense counsel about exculpatory information;

- It does *not* relate to a case where the prosecutor was found to have violated the Colorado Rules of Criminal Procedure relating to disclosure requirements or was found in contempt of court or where any other sanction was imposed for the prosecutor's impropriety;

- It does *not* involve the defense being saddled with greater expense in defending the case than would have occurred if the exculpatory information had been given earlier; and

- It does *not* even involve a case in which the prosecutor waited a month, or a week before providing the exculpatory information to the defense, or waited until closely before trial to reveal the information.

Regulation counsel must establish its claims by "clear and convincing evidence." C.R.C.P. 251.18(d). While there is little dispute about the underlying events in this proceeding, and to that extent the evidence is clear and convincing, the key factor which must be proven here is whether the Respondent's disclosures were proven clearly and convincingly to be *untimely.* Since there apparently is no law setting forth how timeliness should be interpreted,[21] one must set forth some analysis as to how the word "timely" is to be viewed.

In addition to the total absence of case authority supporting the majority's conclusion or providing fair notice to the Respondent that her actions were disciplinable, among the troubling features of the majority's ruling is that the determination of unethical conduct has not taken into adequate account the existence and language of rules that all prosecutors know exist and use on a daily basis — the Colorado Rules of Criminal Procedure.

The failure to disclose certain exculpatory information to criminal defendants was first identified as a constitutional violation with the seminal opinion of the United States Supreme Court in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In *Brady,* a defendant's conviction for murder was reversed upon the post-trial revelation that the prosecution had failed to disclose an accomplice's confession to the homicide. The Supreme Court found that the total withholding of crucial information from the defendant violated the defendant's right to due process of law under the United States Constitution.

However, under *Brady* and its progeny, the undisclosed information had to be "material" in the sense that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); *and see People v. District Ct.,* 808 P.2d 831, 834 (Colo.1991).

In 1970, the Colorado Code of Professional Responsibility, DR 7–103(B), adopted ethical disclosure obligations identical to the ABA Model Code requiring prosecutors to make "timely" disclosure of exculpatory information. That Code provision states:

A public prosecutor or other government lawyer in criminal litigation shall make **timely disclosure** to counsel for the defendant, ... of the existence of evidence, known to the prosecutor or other government lawyer, that tends to negate the guilt of the accused, mitigate the degree of the offense, or reduce the punishment. (emphasis added.)

---

**21.** This fact, by itself, raises some doubts as to whether in a case as unprecedented as this, it

can be claimed to be clearly and convincingly untimely.

As phrased and interpreted, these provisions were broader in what must be disclosed than the requirements under *Brady*. However, neither the commentaries explaining this Rule nor the cases interpreting it included any substantive discussion to the meaning of the term "timely."

Indeed, a glance at the Colorado decisions cited in the annotated version of the Colorado Revised Statutes, reflects that all of the cases were concerned about disclosures before and in conjunction with the *trial* of the case. *See e.g., People v. Elliston,* 181 Colo. 118, 508 P.2d 379 (1973); *People v. Walker,* 180 Colo. 184, 504 P.2d 1098 (1972); *People v. Drake,* 841 P.2d 364 (Colo.App.1992). No cited case has applied DR 7–103 (or its equivalent in any state) either in the context of disclosures actually made within three days of gaining knowledge or in the context of those made before or immediately following the preliminary hearing stage of criminal proceedings.

Following the promulgation of the ethical standards in the ABA Model Code, the American Bar Association first adopted the ABA Standards of Criminal Justice Relating to the Prosecution Function § 3–3.11(a) in 1971. That subsection required prosecutors to make disclosures "at the *earliest feasible opportunity.*" Although the Commentary to § 3–3.11 says it is "similar to" DR 7–103(B), it does not discuss the basis for or the intent of changing the words from "timely" to "at the earliest feasible opportunity." No cited case has applied Standard 3–3.11 either in the context of disclosures actually made within three days of gaining knowledge or in the context of those made before or immediately following the preliminary hearing stage of criminal proceedings.

In 1993, Colorado adopted its Rules of Professional Conduct, largely based on the ABA Model Rules of Professional Conduct. Colo. RPC 3.8(d) provides, in pertinent part:

The prosecutor in a criminal case shall:

. . .

(d) make *timely disclosure* to the defense of all evidence of information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense . . .

Providing for "timely" disclosure of exculpatory information maintains the original phraseology of the Code DR 7–103 without suggesting or adopting the phraseology of the intervening ABA Standard 3–3.11. Again, the Commentary for the Model Rule provides no explanation for the meaning of the word "timely" or for how or even whether that word should be read in context with the ABA Standard 3–3.11. The separate Colorado Comment relating to Colorado's version of Colo. RPC 3.8(d) simply states that:

Because this provision [Colo. RPC 3.8] is based to a considerable extent on the ABA Standards of Criminal Justice Relating to the Prosecution Function which many jurisdictions have adopted and because it deals with a specialized area of practice, the Committee felt it should leave this provision as it was set out in the Model Rules.

Thus, neither the ABA nor Colorado provided any clarification of what they thought was meant by the term "timely." No cited case has applied Colo. RPC 3.8(d) either in the context of disclosures actually made within three days of gaining knowledge or in the context of those made before or immediately following the preliminary hearing stage of criminal proceedings. As already noted, the only Colorado cases relating to this deal with disclosures in conjunction with the trial of the criminal case.

Perhaps the most important source for determining the meaning of the word "timely" as it relates to the prosecutor's duty to disclose exculpatory information is and should be found in the language of Rule 16 of the Colorado Criminal Rules of Procedure. Like Colo. RPC 3.8(d), Rule 16 is also a rule of the Colorado Supreme Court. It would be incongruous and dangerous for one rule of the Court to suggest that certain conduct is allowable while another rule of the same Court made the same conduct disciplinable. It would also be pernicious to have the more stringent standard contained in an opinion of the Presiding Disciplinary Judge which is not even generally published and which relates to a generally applicable and not clearly articulated disciplinary rule, rather than to have it set forth clearly in the Colorado

Rules of Criminal Procedure which all practitioners recognize and utilize as specifically governing criminal proceedings. Colo. RPC 3.8(d) and Colo. R.Crim. P. 16 should be harmonized so that identical conduct is either permitted or prohibited under both rules. This is particularly true where the intended purpose of the two rules seems to be the same and to spring from the same background and rationale.

Rule 16 is designed to implement *Brady* and to provide for a system of disclosure of information, inculpatory and exculpatory, before trial. Equally clearly, however, Rule 16 clearly expanded the rights of defendants to information beyond that constitutionally mandated in *Brady*.

Nothing in the cases cited by the majority opinion supports the majority's interpretation of the timeliness requirement as being immediate. Nor is it apparent that Rule 16 requires or contemplates such drastic measures. Rule 16 Pt. I(a)(1) requires prosecutors to disclose certain specified information including police reports, witness and expert statements, grand jury transcripts, physical evidence, wiretaps, prior criminal records of witnesses, and a list of trial witnesses. Subsection (a)(2) requires disclosure of exculpatory information. Subsection (b)(1) requires disclosure of police reports, witness statements, physical evidence and the witness list "*as soon as practicable but not later than twenty days* after the defendant's first appearance at the time of or following the filing of charges, ..." Subsection (b)(3) provides that all other disclosures (including exculpatory information) are to be made "*as soon as practicable but not later than thirty days before trial.*" Thus, whereas Colo. RPC 3.8(d) requires disclosure in a "timely" fashion, Rule 16 states that the disclosures are to be made "as soon as practicable." Rule 16 says nothing to suggest that disclosures must be made immediately. Rule 16 suggests that the most definitive and objective feature of disclosure is that it be made either within 20 days of official charges being made (if they are the documents and evidence that were likely to be used in making the charging decision), or at least 30 days before trial.

The factual foundation presented to the Hearing Board shows that *Skidmore* involved allegations of domestic violence by a woman who accused her boy friend of shoving or pushing her and causing a stereo she was carrying to fall and break her finger. The preliminary hearing was set for the afternoon of May 19, 1998. On either May 18 or the morning of May 19, Respondent noticed for the first time a handwritten letter which had been attached to the file which purported to be a recantation by the victim claiming that her injury was merely caused by an accidental bumping. The majority finds that Respondent's mailing of this letter to the defendant's lawyer the next day, after the defendant waived his preliminary hearing, was not "timely."

Although the Respondent did not assert that she doubted the authenticity of the letter, she did recognize it as consistent with a familiar pattern of recantation by domestic abuse victims. There is nothing in the majority's ruling, however, that would excuse immediate disclosure of the information just because the prosecutor wished first to verify the authenticity of or circumstances surrounding the letter. The majority states that Respondent "had sufficient time and opportunity" to disclose the information to the defense counsel. However, it is virtually impossible to conceive of a situation, given today's means of instant communications, in which the prosecution would ever not have sufficient time and opportunity to disclose information. Thus, it is apparent that the majority has read the word "timely" in Colo. RPC 3.8(d) to mean "immediately."

Indeed, Attorney Regulation Counsel in its Brief Concerning Discipline was clear and straightforward as to its view of this matter:

It is the position of the Regulation Counsel that Colo. RPC 3.8(d) imposes an obligation to *immediately disclose* evidence of an exculpatory nature *without regard to* the *nature of the pending proceeding* or *the materiality of the evidence* to the proceeding.

(*Id.* at 3; emphasis added.)

The majority asserts that had the defense counsel known of this letter he might not have waived his right to a preliminary hear-

ing and that defendant was deprived of the "possibility" that he might have been able to persuade the county court judge conducting the preliminary hearing that the victim's testimony was "incredible as a matter of law."

In his testimony to the Hearing Board, the complainant-defense counsel (who was the same defense lawyer in both cases and the same complainant in both disciplinary charges), made the genuinely astonishing assertion, as noted in the majority opinion, that he had advised his client to waive the preliminary hearing and face felony charges because "a jury of twelve was strategically more favorable than a jury of six." In other words, defendant's counsel claims he told the defendant that it was better to face the possibility of a felony domestic abuse conviction than to be assured that he could only be faced with a third degree misdemeanor conviction. Notwithstanding this testimony, the majority credits complainant's assertion that if he had known of the letter he would have subpoenaed in the victim to testify in person at the preliminary hearing in an effort to prove that she was "incredible as a matter of law." Due to this highly speculative possibility, the majority has determined that even at the stage of a preliminary hearing a prosecutor must, at the potential cost of his or her ability to practice law, hand over this information essentially immediately.

In any event, almost immediately after complainant received the exculpatory information, he filed a motion for sanctions against Respondent. In fact, the district attorney's office dismissed the criminal charges shortly thereafter because it had then personally interviewed the purported victim. There is no evidence that the dismissal had anything to do with the sanctions motion.

Under this application of Colo. RPC 3.8(d), a prosecutor will have no opportunity to determine whether any exculpatory information, such as a handwritten letter, has been coerced or is even genuine, before having to deliver it to the defense months before the defendant would have any substantive use for the information.

The majority's new rule seems particularly unnecessary when one considers the level of the examination of proof required and al-lowed at a preliminary hearing in Colorado. The law is clear and was recently summarized by the Colorado Supreme Court in *People v. Hall,* 999 P.2d 207, 221 (Colo.2000):

> To establish probable cause in a preliminary hearing, the prosecution must "present evidence sufficient to induce a person of ordinary prudence and caution to entertain a reasonable belief that the defendant committed the crime charged." The prosecution does not have to establish ... even the likelihood that the defendant committed the crime.
>
> ... The court must view all the evidence and draw all inferences in favor of the prosecution, and the court must not accept the defendant's version of the facts over the legitimate inferences that can be drawn from the prosecution's evidence. The court should not review the merits of the prosecution's factual assertions because that function should be left for the trier of fact if the case goes to trial. (Citations omitted.)

Given this state of the law, it is genuinely speculative to assume that even the immediate disclosure of the information available to the prosecutor would have or could have made any difference whatsoever in the outcome of the proceeding. Nor would the two or three day delay in disclosure have made any difference as to the defendant's conviction or level of punishment.

The stepbrother sexual abuse case presented to the Hearing Board was a sexual assault case against a minor boy involving an eleven year-old girl. Together with an independent witness, Respondent interviewed the eleven year-old victim two or three hours before the preliminary hearing. In that interview, Respondent learned that the victim was changing her story. The victim denied her earlier story that the defendant had committed sexual assault by oral-genital contact and told the Respondent that the defendant had committed sexual assault by rubbing his penis against her vagina. It is undisputed that Respondent knew from past similar experience that this defense counsel, complainant, would move to disqualify the entire Cortez, Colorado, district attorneys' office if Respondent were to tell him what

the victim had told her and there was any subsequent variation of the victim's statement when the victim testified at the preliminary hearing. Defense counsel would claim that Respondent had to be a witness in the trial to an inconsistent statement and, along with the rest of the lawyers in the office, should be disqualified under Colo. RPC 3.7.[22]

For reasons beyond Respondent's control, the independent witness was unable to prepare her written statement of the victim's interview until the next day — the day after the preliminary hearing. When this statement was completed, it was sent to the defense counsel and was received by him two days after the preliminary hearing.

Instead of risking disqualification of the entire office, a serious problem in a small and relatively remote location like Cortez, Respondent decided to make the defense counsel aware of the change in statement by asking the victim about it while she was testifying at the preliminary hearing. The victim in fact testified about her different version of the sexual assault, and defense counsel cross-examined her vigorously on the change. Nonetheless, Respondent did not specifically elicit the single fact that the victim denied having previously said that the defendant had engaged in oral-genital contact.

Complainant-defense counsel speculates, and the majority agrees, that had he known *all* of the details of the victim's changed statement he might have been able to persuade the judge that the victim was "incredible as a matter of law." Again, the majority ruling in this case places the burden on a prosecutor to disclose every bit of exculpatory information immediately, at the risk of her ability to practice law and her professional reputation, even though such a step would occur months before trial and at the risk of disqualifying the entire office.

The majority rejects the position that Respondent should have been allowed to take the simple step of having the independent witness reveal the contents of the interview, even though that only took a couple of days and was accomplished long before any prospective trial or substantive hearing in the case. As before, on learning the new information, the complainant immediately filed another motion for sanctions against Respondent, which were not granted. This stepbrother sexual abuse case was also dismissed on the district attorney's motion well before trial.[23]

The adoption of the rule applied by the majority will certainly give disgruntled defendants and their attorneys ample grounds for complaining about any failure to disclose exculpatory information, regardless of how important or tangential, within minutes of the time it is received. Indeed, given the concern expressed by the majority in the *Skidmore* matter that Respondent allowed her earlier tendered plea offer to stand for a day even after she became aware of the letter, it is easy to anticipate that defendants routinely will be seeking disciplinary sanctions every time they enter a plea and discover that the prosecutor did not tell them that the prosecutor had just learned that some witness (regardless of the importance of the witness) was going to be out of town for trial.

It requires little imagination to anticipate prosecutors' abiding sense of paranoia when, after reading this decision, they realize that Respondent here was given leniency because of her inexperience, lack of explicit knowledge about the extent of the reach of Colo. RPC 3.8(d), and the fact that she consulted with her boss on one of the matters first. Experienced prosecutors will properly fear for their licenses and not just public humilia-

22. Although outside the issues raised by the present complaint, the fact that such a tactic has been used by this and other defense counsel seems to be a highly questionable use of the Rules of Professional Conduct.

23. Given the lack of any appreciable harm in either case and the fact that a trial date had not yet even been set in either case, one must suspect that it was not the complainant's finely tuned

ethical sensitivities [but *cf.*, text accompanying note 22, above] that caused him to file, first, motions for sanctions in the trial courts and, then, the present disciplinary complaint. One might speculate that it could have had more to do with the fact that Respondent's boss, the new District Attorney, had recently won election a few months before by beating the incumbent District Attorney — the complainant.

tion.[24]

It requires little speculation to imagine the opportunities the Office of Attorney Regulation Counsel will have to prosecute prosecutors for events which result in no harm, do not relate to the guilt or innocence of the defendant and may well be used for harassing, intimidating, disqualifying, vindictive, or punitive purposes by defendant's counsel (although such motives would not be any defense to the disciplinary charges).

It is clearly within the province of the Supreme Court of Colorado to decide that in fact it wants prosecutors to disclose all matters "immediately," without considering the significance or insignificance of the information, and without regard to the collateral consequences of having to make such instantaneous decisions. However, there is nothing in either Colo. RPC 3.8(d) or Rule 16 that suggests that such a determination has yet been made by the Supreme Court. If the Supreme Court wants to take this action, it could do so by unequivocal amendment to the most pertinent set of rules applicable to criminal prosecutions – the Colorado Rules of Criminal Procedure and specifically Rule 16. Since the Court has not done so, it does not seem appropriate for this Hearing Board effectively to create such a largely invisible amendment to Colo. R.Crim. P. 16.

## IV. ORDER

It is therefore ORDERED:

1. PAMELA F. MUCKLOW is PUBLICALLY CENSURED effective thirty-one days from the date of this Order;

2. Pamela F. Mucklow is ordered to pay the costs of these proceedings within sixty (60) days of the date of this Order;

3. The People shall submit a Statement of Costs within fifteen (15) days of the date of this Order. Respondent shall

24. Presumptively, Respondent's boss would not have gotten off with only a public censure had

have ten (10) days thereafter to submit a response thereto.

complainant grieved him instead of Respondent.